COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Elder and
          Senior Judge Overton
Argued at Alexandria, Virginia


LESLIE J. CLOUTIER
                                          OPINION BY
v.    Record No. 2018-00-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          MAY 8, 2001
THOMAS W. QUEEN


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Robert W. Wooldridge, Jr., Judge

          Richard C. Shadyac, Jr. (James C. Roberts;
          Feldesman, Tucker, Leifer, Fidell & Bank,
          LLP; Mays & Valentine, L.L.P., on briefs),
          for appellant.

          Joseph A. Condo (Condo & Masterman, P.C., on
          brief), for appellee.


     In this appeal, Leslie J. Cloutier (mother) contends the

trial court erred in its decision denying her request to

relocate.  Finding no error, we affirm.

                         I.  BACKGROUND

     In accordance with familiar principles, we view the

evidence in the light most favorable to the prevailing party

below.  See Brown v. Brown, 30 Va. App. 532, 534, 518 S.E.2d

336, 337 (1999).  Mother and Thomas W. Queen (father) were

married December 10, 1988 and have two minor children.  The

parties separated July 1, 1998 and reached an agreement

providing for joint legal custody of their children.  The

agreement provided:

>a.  The parties shall have joint legal custody of their minor children, ZACHARY QUEEN, born August 11, 1992, and ALISON QUEEN, born August 28, 1994, who shall reside with the parties as set forth below:
>
>b.  Except as provided in subparagraph c, below, the Husband shall have residential time with the children on the following four-week rotation:
>
>>Week One:  From Thursday at or before 5:30 through Sunday at 5:30 p.m.
>>
>>Week Two:  From Thursday at or before 5:30 through Saturday at 9:30 a.m.
>>
>>Week Three:  From Thursday at or before 5:30 through Monday at 9:30 a.m.
>>
>>Week Four:  From Thursday at or before 5:30 through Saturday at 9:30 a.m.
>
>c.  On Fridays, the children shall reside with the Wife from 9:00 a.m. to 5:30 p.m., unless the Husband is off work that day due to emergency weather conditions, in which case the children shall remain with him.
>
>d.  At all times not otherwise specified above, the children shall reside with the Wife.

The agreement also provided for vacation and holiday time with

both parents.  A final decree of divorce was entered October 8,

1999 that incorporated the joint custody agreement.  At the time

of divorce, both parties lived in Fairfax County, where they had

lived for most of their marriage.

Mother married Scott Livingston (Livingston) on November 20, 1999.  Livingston, an attorney, lives and works in Mount Lebanon, Pennsylvania.  On January 18, 2000, mother filed a "Motion for Relocation and to Modify Custodial Access" so she could move with her children to Livingston's residence in Pennsylvania.  Father filed a cross-motion requesting that the trial court deny mother's request to relocate and grant him primary residential custody of his children.

On May 9 and 10, 2000, the trial court held a hearing on the relocation request and the request to change primary custody of the children.  At the conclusion of the hearing, the chancellor found that "it is in the best interests of these children to grant [mother's] motion to allow her to move" to Mount Lebanon.  On May 26, 2000, father filed a motion to reconsider the court's ruling.  On June 28, 2000, via telephone conference call, the chancellor denied father's motion to reconsider.  On June 30, 2000, the chancellor entered an order disposing of all pending issues and granted mother's request to relocate.  On July 5, 2000, the chancellor vacated the decree of June 30, 2000 and scheduled a July 7, 2000 hearing to reconsider the matter.  On July 6, 2000, mother, at the court's request, filed a memorandum in opposition to father's motion to reconsider.  On July 7, 2000, the trial court, after further hearing and argument, reversed its prior ruling, stating:

> When I ruled in May, I said it was
> because I found that it was in the best
> interest of these children to be allowed to
> move.
> But as I have given that more thought
> than I would like to share with the parties
> since then, I believe that I wrongly equated
> what was in Ms. Cloutier's best interest
> with what's in the children's best interest.
> And I have no doubt that it's in her
> best interest for the children to be allowed
> to move, but I also have no doubt that it's
> in the best interest of the children to
> remain here under a parenting arrangement
> that is akin to that which the parties have
> established.

Thus, the trial court ordered that the status quo remain
unchanged and denied both the mother's motion to relocate and
the father's motion to transfer primary residential custody to
him.

On July 18, 2000, mother filed a motion to reconsider this
ruling.  The trial court denied mother's motion on July 24, 2000
and entered a final order on August 11, 2000, which rescinded
and vacated the court's initial decision to grant mother's
motion for relocation, granted father's motion to reconsider and
ultimately denied mother's motion for relocation.  Mother
appeals from the trial court's August 11, 2000 decree.

## II.  TRIAL COURT'S VACATION AND RECONSIDERATION
## OF THE JUNE 30, 2000 DECREE

Mother contends that the chancellor erred by vacating the
initial June 30, 2000 decree and entering a later final order
reversing his original decision.  She argues that the chancellor

lacked authority to modify the initial June 30, 2000 decree absent a finding of "changed circumstances."  We disagree.

Rule 1:1 provides that, "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."  (Emphasis added.)  If the trial court does not enter an order suspending or vacating the final order within twenty-one days, the trial court thereafter is divested of jurisdiction over the matter.  See Vokes v. Vokes, 28 Va. App. 349, 357-58, 504 S.E.2d 865, 869 (1998).  Rule 1:1 allows the trial court to correct or change an order within the twenty-one-day window whenever circumstances require it.  This is not a new custodial proceeding, requiring a threshold showing of a material change in circumstances, but rather it is a continuation of the underlying hearing and disposition.[1]  See Smith v. Smith, 18 Va. App. 427, 432, 444 S.E.2d 269, 273 (1994)

---

[1] Appellant cites a number of federal cases which require the court to find a material change of circumstances prior to granting a motion to reconsider.  However, there is no federal equivalent to Rule 1:1 and, therefore, federal cases on reconsideration are inapplicable.

Appellant also relies on Baxter v. Baxter, No. 0258-00-4, 2000 WL 1339505 (Va. Ct. App. Sept. 19, 2000).  We note that Baxter v. Baxter and the cases it cites are not on point. Furthermore, an unpublished opinion of this Court is not "to be cited or relied upon as precedent except for the purpose of establishing res judicata, estoppel or the law of the case." Grajales v. Commonwealth, 4 Va. App. 1, 2 n.2, 353 S.E.2d 789, 790 n.2 (1987).

(which required no change of circumstances to modify a final decree if done within the twenty-one-day period allowed by Rule 1:1). To hold otherwise would as stated by the chancellor require "an abdication of what I think I'm charged with doing as a judge." The chancellor must have the ability to enter a timely order embodying a correct resolution of the case.

In the instant case, the chancellor's original decree was entered June 30, 2000 and vacated July 5, 2000. Therefore, the chancellor timely vacated the decree in accordance with Rule 1:1. The decision whether to reconsider the decree within the twenty-one-day time period lies within the sound discretion of the chancellor. See Howe v. Howe, 30 Va. App. 207, 213, 516 S.E.2d 240, 243 (1999). Thus, the chancellor, after reflection, determined that his initial decision was erroneous and timely corrected it in the same proceeding. Therefore, we hold that the chancellor did not abuse his discretion in vacating the June 30, 2000 decree that allowed wife's relocation with the parties' children.[2]

---

[2] Because we find that the chancellor did not abuse his discretion in vacating his June 30, 2000 decree, our review is limited to whether the evidence supports his ultimate decision that the mother failed to meet her burden of proof that the move would be in the best interest of the children.

III.  DENIAL OF DUE PROCESS

A.  "LOCAL RULES"

Mother next contends she was denied due process when the trial court reconsidered its original ruling without giving her an opportunity to respond to father's motion to reconsider, thus violating "local rules" set out in The Fairfax Circuit Court Manual.  The cited sections of the "local rules" provide that "[n]o response to the Motion for Reconsideration should be filed by the original prevailing party unless and until a response is requested by the Judge," and "[i]f the Judge may reconsider the original ruling, the Judge will request a response to solely the issue or issues the Judge may reconsider."  (Emphasis in original.)

As a preliminary matter, Code § 8.01-4 provides that "local rules" are limited to "those rules necessary to promote proper order and decorum and the efficient and safe use of the courthouse facilities and the clerks' offices."  "Local rules" cannot affect the substantive rights of the litigants.  In line with these strictures, the Foreword to the Fairfax Circuit Court Manual specifically states that:

> the procedures set out herein are not Rules
> and cannot provide a basis for the
> imposition of sanctions, nor are they
> intended to create additional pitfalls for
> unwary practitioners, especially those who
> do not often practice before our Court.
> Thus, the judges will retain discretion not
> to enforce a procedure strictly if the judge

believes it would be unjust to do so under
the circumstances of that specific case.

\*    \*    \*    \*    \*    \*    \*

[They are] not Rules of the Court.

Furthermore, on July 6, 2000, mother filed a response to
father's motion to reconsider, and the chancellor acknowledged
that appellant "filed an opposition to [the] motion to
reconsider, which I received and have reviewed."  Appellant was
also given an opportunity to make oral argument to the trial
court concerning the reconsideration.  Thus, we find no lack of
due process in mother's ability to present and argue her case.
She was provided with and took advantage of the opportunity to
respond to the motion for reconsideration, and the suggested
procedures set out in the Fairfax Circuit Court Manual impaired
no substantive or procedural due process right.

### B.    REMEDY NOT REQUESTED BY THE PARTIES

Next, mother argues that the trial court erred by
"impos[ing] a custody schedule on the parties that neither
party" requested.[3]  However, father, in his response to mother's
motion, "pray[ed] that the [motion] be denied" and mother, in
her answer and opposition to father's cross-motion, requested

---

[3] Mother relies upon Potts v. Mathieson Alkali Works, 165
Va. 196, 181 S.E. 521 (1935), for this proposition.  However,
unlike the instant case, Potts was a case at law not a case in
equity.  Potts holds only that a party cannot request one remedy
in his or her pleadings and then at trial request a different
remedy based upon a claim that was not set forth in the
pleadings.  Thus, Potts is inapplicable in the instant case.

that the trial court "deny the Defendant's Cross-Motion to transfer primary custody of the children to the Defendant." Thus, each party was aware and on notice that the other party had requested that the court deny their respective motions. Furthermore, Code § 20-108 provides:

> [t]he court may, from time to time after decreeing as provided in § 20-107.2, on petition of either of the parents, or on its own motion or upon petition of any probation officer or superintendent of public welfare, which petition shall set forth the reasons for the relief sought, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require.

(Emphasis added.) "The burden is on the moving party to show a right to the relief sought." Hughes v. Gentry, 18 Va. App. 318, 326, 443 S.E.2d 448, 453 (1994) (citing Holmes v. Holmes, 7 Va. App. 472, 482, 375 S.E.2d 387, 393 (1988)). If the moving party fails to meet his or her burden of proof, the trial court maintains the discretion to deny a motion to modify custody. See Bostick v. Bostick-Bennett, 23 Va. App. 527, 478 S.E.2d 319 (1996); Hughes, 18 Va. App. 318, 443 S.E.2d 448. The moving party must establish that modification of custody is in the best interests of the child. Bostick, 23 Va. App. at 535, 478 S.E.2d at 323. In determining child custody issues, including relocation, the trial court's paramount concern and the determinative factor must remain the "best interests of the

child," regardless of what the parents desire. See Stockdale v. Stockdale, 33 Va. App. 179, 183, 532 S.E.2d 332, 335 (2000); see also Brown, 30 Va. App. 532, 518 S.E.2d 336; Piatt v. Piatt, 27 Va. App. 426, 499 S.E.2d 567 (1998); Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986). If the trial court finds that relocation is not in the "best interests of the child," the trial court must deny the relocation request. See Wilson v. Wilson, 12 Va. App. 1251, 1255, 408 S.E.2d 576, 579 (1991); Scinaldi v. Scinaldi, 2 Va. App. 571, 573, 347 S.E.2d 149, 150 (1986). If maintaining the status quo is in the "best interests of the child," the court shall deny any requests to change custody and order that the status quo be maintained. See Brown, 30 Va. App. at 538, 518 S.E.2d at 339.

In the instant case, the chancellor determined that neither mother's request to remove the children from their current environment nor father's proposal to grant him primary physical custody was in the best interest of the children. The chancellor was required to fashion an appropriate remedy that comported with the best interest of the children, even if not specifically requested by the mother or father. Thus, once the issue of the appropriate custody or visitation plan for the children was before the court, the court was not required to adopt either parent's suggested remedy. The need to fashion complete justice on the facts presented is the role of the chancellor. A chancellor is required to make a custody

determination based solely upon the best interests of the children.  To limit a chancellor's remedy to only the custody arrangement requested by one of the parents would unduly restrict his or her options and allow a parent to circumvent the statutory obligation of the chancellor to determine custody based only upon the "best interests of the child."

### IV.  DENIAL OF MOTION TO RELOCATE CHILDREN

Mother next contends she met her burden of proof and the trial court erred in denying her motion to relocate to Pennsylvania with her children.  When the court hears evidence at an ore tenus hearing, its decision "'is entitled to great weight and will not be disturbed [on appeal] unless plainly wrong or without evidence to support it.'"  Piatt, 27 Va. App. at 432, 499 S.E.2d at 570 (quoting Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986)).  On appeal, we view the evidence in the light most favorable to the prevailing party below.  See Brown, 30 Va. App. at 534, 518 S.E.2d at 337. Therefore, the issue to be addressed is whether the evidence supports the chancellor's August 11, 2000 order.

### A.  CHANCELLOR'S FAILURE TO REFER TO THE STATUTORY FACTORS IN THE ORDER

Mother alleges that the trial court failed to consider the statutory factors, as required by Code § 20-124.3, because in reconsidering the case the chancellor "did not even mention, let alone consider, the required statutory factors."  Therefore,

mother alleges that the trial court erred.  The record clearly establishes that the chancellor considered all the evidence presented by the parties and witnesses, appropriately analyzed the statutory requirements, and referred to his consideration of them during the proceedings.

The trial court must "give primary consideration to the best interests of the child."  Code § 20-124.2(B).  Custody determinations must be based upon the child's best interest as viewed under the circumstances existing at the time of the decision.  See Wilson, 12 Va. App. at 1255, 408 S.E.2d at 579.  Failure to consider all the factors set out in Code § 20-124.3 is reversible error.  See Piatt, 27 Va. App. at 434, 499 S.E.2d at 571.  However "[a]s long as the trial court examines the factors, it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'"  Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (emphasis added) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)).

In the instant case, the trial court stated in its original ruling on May 10, "I have fully considered all of the factors contained in section 20-124.3 of the Code of Virginia, particularly focusing on paragraphs 1 through 6 and paragraph 9, which is the any other factors paragraph.  I don't think 7 and 8 are applicable."  During his further review of the case, he re-evaluated the relationship of the evidence to the factors.

On July 7, 2000, after hearing arguments to reconsider, the

chancellor stated,

> [i]t will come as no surprise to any of you
> that this checkered chronology [of the case]
> stems from the fact that I have wrestled
> with my decision in this case from that May
> date as I have wrestled with no other case
> that I can remember for quite a while.
>
> *      *      *      *      *      *      *
>
> I think I'm able to distinguish between
> the consternation that arises when, on the
> one hand, I have to make a difficult
> decision that's significantly going to
> affect people's families.  The tough calls,
> as Mr. Shadyac calls them.
> And on the other hand, when I make a
> decision that, on continued reflection, I
> become convinced was the wrong one.
> And having reconsidered this matter, I
> find that it is not in the best interest of
> these children to be allowed to move from
> McLean to Mount Pleasant [sic],
> Pennsylvania, and I grant Mr. Queen's motion
> to reconsider and I deny Ms. Cloutier's
> motion for leave to move them.
> I am convinced that it is in the best
> interest of these children to maintain the
> nature and extent of a relationship with
> both of their parents.  That can only be
> achieved through the physical proximity that
> the parties went to great lengths to
> establish.
> And contrary to my earlier ruling, I do
> not believe that Mr. Queen and his children
> can maintain the type and the quality of a
> relationship that I think is in the best
> interests of these children if that move
> took place, that what they would gain from
> the move would be outweighed by what they
> would lose.
>
> *      *      *      *      *      *      *
>
> When I ruled in May, I said it was
> because I found that it was in the best

interest of these children to be allowed to move.

But as I have given that more thought than I would like to share with the parties since then, I believe that I wrongly equated what was in Ms. Cloutier's best interest with what's in the children's best interest.

And I have no doubt that it's in her best interest for the children to be allowed to move, but I also have no doubt that it's in the best interest of the children to remain here under a parenting arrangement that is akin to that which the parties have established.

\*      \*      \*      \*      \*      \*      \*

. . . [F]or me not to [deny the request to relocate] would be an abdication of what I think I'm charged with doing as a judge, and that's determining the best interest of these children and ruling accordingly.

In reviewing the record as a whole, it is clear that the chancellor conscientiously considered the required factors during the course of these proceedings.

B.   BEST INTEREST OF THE CHILDREN

Mother further argues the trial court erred in failing to find that the best interests of the children would be served by permitting her to move them to Pennsylvania.[4]  The party requesting permission to remove the child from the state bears the burden of proof.  See Bostick, 23 Va. App. at 535, 478 S.E.2d at 323.  "It is well settled in Virginia that the best

---

[4] Mother also contends that the trial court erred in its factual findings regarding Livingston's ability to move to Virginia and mother's ability to be a stay at home mom in Virginia.  However the chancellor "didn't find [mother's testimony] persuasive."

interests of the children controls the issue of a change of custody or the issue of a custodial parent moving the children to another state."  Simmons, 1 Va. App. at 362, 339 S.E.2d at 200; see also Bostick, 23 Va. App. at 535, 478 S.E.2d at 323. In reaching a decision on the "best interests of the child," the court is guided by Code § 20-124.3.[5]  See Stockdale, 33 Va. App. at 181-82, 532 S.E.2d at 334.

---

[5] Code § 20-124.3 provides:

> In determining best interests of a child for purposes of determining custody . . . the court shall consider the following:
> 1.  The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
> 2.  The age and physical and mental condition of each parent;
> 3.  The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the needs of the child;
> 4.  The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;
> 5.  The role which each parent has played and will play in the future, in the upbringing and care of the child;
> 6.  The propensity of each parent to actively support the child's contact and relationship with the other parent, the relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;

Mother presented evidence showing positive results from her anticipated move to Pennsylvania.  Her children would have the advantage of a new nuclear family, including Livingston and his children.  She testified, inter alia, that the children wanted to move and live with Livingston, she had been and continues to be their "primary caregiver," and her retirement after relocating would allow her to attend to her children all day.  She also testified that she would support father's visitation and offered to transport the children to him.  Mother produced evidence that Mount Lebanon was a good community and provided excellent schools.  This evidence supports her desire to relocate; however, on appeal, we view the evidence in the light most favorable to the prevailing party below.  See Brown, 30 Va. App. at 534, 518 S.E.2d at 337.

Thus, while these were factors to be weighed and considered by the court, the record also disclosed other evidence relevant

7.  The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference; 8.  Any history of family abuse as that term is defined in § 16.1-228; and 9.  Such other factors as the court deems necessary and proper to the determination.
The judge shall communicate to the parties the basis of the decision either orally or in writing.

Code § 20-124.3 has been amended since the May 9-10, 2000 hearing.  The amendments make no substantive changes relevant to this present appeal.

to the issue before the chancellor.  The evidence established that the joint custody arrangement currently in effect had worked well.  Father was involved with the children and their activities.  He attended school, extracurricular and sports functions, helped the children with their homework and met their needs when he was their caretaker.  The children expressed a desire to spend more time with him.  They were doing well socially and academically.  Mother testified that their teachers commented that the children "don't seem like they're from a divorced family.  They're happy.  They're well-adjusted."  In sum, the evidence established that father was also an active participant in the children's lives on a daily basis and their current environment was a positive one.

If relocated, the children would move to Mount Lebanon, Pennsylvania, approximately a four-hour drive from father.  The trial court determined that both mother and father were "very good parents."  "I have a mother and a father who are sharing time and commitments in a way that should be applauded and that has worked."  The chancellor further explained:

> I find that it is not in the best interest of these children to be allowed to move from McLean to Mount Pleasant [sic], Pennsylvania, and I grant Mr. Queen's motion to reconsider and I deny Ms. Cloutier's motion for leave to move them.
> I am convinced that it is in the best interest of these children to maintain the nature and extent of a relationship with both of their natural parents.  That can only be achieved through the physical

proximity and through the sort of custodial arrangement that the parties went to great lengths to establish.

And contrary to my earlier ruling, I do not believe that Mr. Queen and his children can maintain the type and the quality of a relationship that I think is in the best interests of these children if that move took place, that what they could gain from the move would be outweighed by what they would lose.

\*     \*     \*     \*     \*     \*     \*

I also have no doubt that it's in the best interest of the children to remain here under a parenting arrangement that is akin to that which the parties have established.

The chancellor also stated that mother's arguments, that the children like Livingston and Livingston's children, were not relevant to his determination of the best interest of mother and father's children.  Thus, the chancellor concluded that father's relationship with the children would be "substantially impaired" by allowing mother to move them to Pennsylvania.  See Stockdale, 33 Va. App. at 184, 532 S.E.2d at 335; Scinaldi, 2 Va. App. at 575, 347 S.E.2d at 151.  After viewing all the evidence and weighing the factors, the trial court concluded that mother failed to meet her burden to prove that the best interest of the children would be served by moving them to Pennsylvania.  Based upon the record before us, we hold that the chancellor's ruling is not plainly wrong or without evidence to support it.

Lastly, mother contends the trial court erred by not considering the interests of the mother, the custodial parent,[6] in determining whether to grant the relocation request.[7] Mother relies upon New Jersey case law for a "unity of interests" analysis which mother urges this Court to adopt. She argues that as a matter of law the interests of the children cannot be divorced from those of their primary caregiver and, therefore, whatever benefits mother will also benefit the children.

In Virginia, the law is clear that the "best interests of the children controls the issue of a change of custody or the issue of a custodial parent moving the children to another state." Simmons, 1 Va. App. at 362, 339 S.E.2d at 200; see also Stockdale, 33 Va. App. at 183, 532 S.E.2d at 335; Bostick, 23 Va. App. at 535, 478 S.E.2d at 323. The court may consider a benefit to the parent from relocation only if the move independently benefits the children. We decline to adopt a "unity of interests" approach.[8]

---

[6] Although mother delineates herself the "custodial parent," both mother and father share joint custody of the children. This is not a case involving a custodial parent and a non-custodial parent with visitation rights.

[7] We note that prior to the expiration of the twenty-one days, mother put her home on the market and changed her work status in reliance on the earlier decision. Although this created a substantial hardship, which the trial judge acknowledged, his final decision was based on the best interests of the children.

[8] Mother also alleges that the trial court punished her by relying solely upon her statement that if her motion to relocate

## V.   CONCLUSION

For the reasons set forth above, we affirm the judgment of the trial court.

Affirmed.

---

was denied she would stay in Virginia.  As previously noted, the trial court's decision to deny mother's motion was based upon the trial court's finding that it was not in the best interest of the children to move from their current environment where they were flourishing.  Furthermore, the chancellor's reference to mother's statement that she would remain in Virginia, if not allowed to relocate, was not a part of his ruling.  Only after the judge announced his ruling did mother's attorney inquire:

> MR SHADYAC:  [] just so I understand the Court's ruling, there's no change in custody, there's no change in custodial access.  What you're contemplating is a continuation of what existed prior --
> THE COURT:  That's what Ms. Cloutier said. She wasn't going to move.
> MR. SHADYAC:  There was a cross petition also, your Honor, for him to have custody.
> THE COURT:  I'm denying his cross petition.

Thus, the record does not establish that the trial court relied solely upon mother's statement that she would not relocate if her motion was denied.