COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Russell and Senior Judge Frank

JAMES MICHAEL WHEELER, JR.

MEMORANDUM OPINION[*]
v.      Record No. 2230-14-1                                    PER CURIAM
                                                               MAY 19, 2015
LILIANA WHEELER

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

(Christopher B. Galloway; Legal Aid Society of Eastern Virginia, on
briefs), for appellant.

(Karen M. Somers; Military Divorce, P.C., on brief), for appellee.


James Michael Wheeler, Jr. (father) appeals an order allowing Liliana Wheeler (mother) and

the parties' children[1] to relocate to San Diego, California. Father argues that the trial court erred by

(1) "ruling that it had 'additional latitude' in determining the legal standard for relocation because of

Mother's employment with the military, and in ruling that the established standards would place a

discriminatory higher burden on Mother;" (2) "ruling that relocation would independently benefit

the children, because the court gave improper weight to Mother's career dilemma, which was

caused by her decision to select San Diego as her preferred duty station;" and (3) "finding that the

children's relationship with Father would not be substantially impaired by relocation." Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The parties have three children, who were born in December 2005, December 2008, and February 2014.

BACKGROUND

"We review the evidence in the light most favorable to mother, the party prevailing below, and grant her all reasonable inferences fairly deducible from the evidence viewed in that light." Goodhand v. Kildoo, 37 Va. App. 591, 595, 560 S.E.2d 463, 464 (2002).

Father and mother married on August 24, 2004 in California. At the time of their marriage, mother was enlisted in the United States Navy. Father had been in the Navy when he first met mother, but ultimately was discharged because of a "personality disorder." Husband is not eligible to reenlist. After their marriage, husband had several panic attacks and did not maintain stable employment.

In 2007, the parties moved to Norfolk, Virginia because of mother's orders from the Navy. In late 2012 and early 2013, mother was deployed on a ship at sea, and father watched the parties' two oldest children.[2] While mother was deployed, father was hospitalized for mental health issues. Mother received a message from father's sister, asking that mother come home to help her family because father was unable to care for the children. In February 2013, father was diagnosed with severe anxiety and depression. Mother received a humanitarian package reassignment that allowed her to end her deployment early and return to Norfolk.

Upon mother's return to Norfolk, the parties began having marital problems. In September 2013, mother filed a complaint for divorce. On November 1, 2013, the parties entered into a handwritten separation agreement, wherein they agreed to "a shared custodial arrangement with the children."

In May 2014, the Navy allowed mother to select her top five preferences for her next duty assignment, which would begin in February 2015. Mother's family lives on the west coast, including California and Arizona. She requested positions in San Diego or Hampton Roads.

---

[2] The parties' youngest child was not born at this time.

Mother was required to go back out to sea, so she looked for assignments where the deployments were "less arduous and shorter in duration." Mother obtained a position in San Diego and received orders from the Navy to transfer there.

Mother asked the trial court for permission to relocate to San Diego with the children. Father objected. He said that he would not follow the family to San Diego. The trial court ruled that the parties would share custody equally "as nearly as practicable," except if the Navy ordered mother to relocate.[3] The trial court hoped that father would relocate with them, but if not, then father's visitation would include the entire summer in Virginia and reasonable and liberal visitation in California. Father filed a motion to reconsider, to which mother filed a response. The trial court held two hearings on the matter. During this time period, mother received her orders from the Navy. On November 17, 2014, the trial court entered an "Opinion and Order on Custody and Relocation," which analyzed the factors in Code § 20-124.3 and allowed mother to relocate with the children.[4] This appeal followed.

ANALYSIS

A trial court's decision regarding a parent's relocation and the children's best interests "'is a matter of discretion . . . , and, unless plainly wrong or without evidence to support it, the court's decree must be affirmed.'" Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002) (quoting Bostick v. Bostick-Bennett, 23 Va. App. 527, 533, 478 S.E.2d 319, 322 (1996)); see also Judd v. Judd, 53 Va. App. 578, 589, 673 S.E.2d 913, 918 (2009).

"In a court's decision as to the propriety of relocating the children . . . , 'the welfare of the children is of primary and paramount importance.'" Parish v. Spaulding, 26 Va. App. 566,

---

[3] The trial court ordered that the parents would not share custody of the baby until he was weaned and eating food on his own.

[4] On November 10, 2014, the trial court entered a final decree of divorce. Neither party appealed the divorce decree.

572, 496 S.E.2d 91, 94 (1998) (quoting Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986)).

*Assignment of error #1*

Father argues that the "trial court erred in ruling that it had 'additional latitude' in determining the legal standard for relocation because of Mother's employment with the military, and in ruling that the established standards would place a discriminatory higher burden on Mother."

"In accordance with our prior decisions, the moving party bears the burden of proof." Bostick, 23 Va. App. at 535, 478 S.E.2d at 323.

> [I]f the trial court finds that relocation is not in the "best interests of the child," the trial court must deny the relocation request. If maintaining the status quo is in the "best interests of the child," the court shall deny any requests to change custody and order that the status quo be maintained.

Goodhand, 37 Va. App. at 599-600, 560 S.E.2d at 466-67 (quoting Cloutier v. Queen, 35 Va. App. 413, 423-24, 545 S.E.2d 574, 579 (2001)).

Here, the trial court found that the status quo for this family was to follow mother's orders from the Navy. The trial court stated, "If the Court refused [mother's] request and she separates from the Navy, as she testified she would, the children will lose a significant source of stability – the family's only income, their health insurance, and other military benefits; such circumstances would be a disruption in the status quo."

After examining the factors in Code § 20-124.3 and the facts of the case, the trial court found that mother met her burden of proof in showing that the relocation was in the children's best interests. After making that ruling, the trial court went further and stated, "The Court feels that it has additional latitude, however, to treat the case of a uniformed member of the Armed Forces of the United States bearing military orders to report to a new duty station as something

other than a generic relocation case." The trial court explained that mother did not have the option of staying in Norfolk, once she had orders to report to San Diego. It further stated, "Placing the higher burden on the service member with orders seems to the Court to represent a type of discrimination that courts should be careful to avoid."

Father argues that those findings are erroneous and do not reflect Virginia's case law regarding relocation. To support his argument, he relies on this Court's ruling in Rubino v. Rubino, 64 Va. App. 256, 263, 767 S.E.2d 260, 264 (2015), which stated that the Virginia Military Parents Equal Protection Act, Code §§ 20-124.7 through 20-124.10, "does *not* establish a generalized preference for the military parent for purposes of child custody or visitation." Unlike Rubino, the trial court did not rely on the Virginia Military Parents Equal Protection Act when it issued its custody ruling. In its order, the trial court cited the Act when it stated, "The Court finds that the public policy of Virginia requires equal treatment of military and civilian parents in custody cases and forbids courts from discriminating against the military service member based on his or her military orders." Contrary to father's arguments, the trial court did not rely on the Act to give preferential treatment to mother. The trial court did not establish a different burden of proof for mother because she was in the military. The trial court specifically stated, after it cited the Act, "Obviously, the controlling factor remains the best interests and well-being of the children . . . ."

In this case, the trial court considered the Code § 20-124.3 factors. It also noted that mother was the sole wage earner for the family and father's mental health prevented him from being able to care for the oldest two children for an extended period of time. Despite its comments regarding mother's military status, the trial court's primary focus was the children's best interests.

*Assignment of error #2*

Father argues that the trial court erred in ruling that the relocation would independently benefit the children because the trial court improperly considered mother's "career dilemma," since she chose San Diego as her preferred duty station. Father contends the trial court gave too much weight to the potential harm in mother's career if she did not relocate, rather than to the benefits of the children.

"The court may consider a benefit to the parent from relocation only if the move independently benefits the children." Cloutier, 35 Va. App. at 430, 545 S.E.2d at 583.

> To be sure, as we acknowledged in Sullivan, "advantages accruing to a custodial parent from relocation *oftentimes* inure to the benefit of a child" and should be taken into account. Sullivan, 38 Va. App. at 784, 568 S.E.2d at 436 (emphasis added). These inuring advantages must then be weighed against the possibility of "deleterious effects," particularly any adverse impact on "the relationship between the child and non-custodial parent." Id.

Petry v. Petry, 41 Va. App. 782, 795, 589 S.E.2d 458, 465 (2003).

The trial court agreed with father that a "nicer home or a better school does not outweigh the benefit to a child of daily interaction with an involved and loving parent." However, contrary to father's arguments, the trial court found "two 'independent benefits to the children' that support the [relocation] request." The trial court noted that mother was the sole wage earner in the family. The first benefit of relocation was that the children would continue to have a parent with "regular income, health care and other benefits that are available to them as military dependents." They would lose these benefits if the trial court denied mother's relocation request because she would separate from the Navy. When the trial court issued its final custody order, father did not have a job; instead, he worked as a maintenance man in exchange for having to pay rent. He did not have any way of providing for the children.

- 6 -

The trial court further found that if mother remained in the Navy and relocated to California, the children would be cared for by their mother and grandmother. Mother also had other relatives who lived along the west coast and who could be available to help her, if needed. The trial court explained that father's "frail mental health disrupted his ability to parent" two of his children when mother was deployed in 2012 and 2013. With his previous hospitalizations, father proved that he was incapable of caring for the children on an extended basis. The trial court suggested that father could "relocate as well and participate in their care without having to assume around the clock sole responsibility."

The evidence was sufficient to prove that there were independent benefits to the children associated with relocating to California.

*Assignment of error #3*

Father argues that the trial court erred in finding that the children's relationship with father would not be "substantially impaired" by the relocation to San Diego.

"The moving party bears the burden of proving that the relocation will not 'substantially impair[]' the relationship between the children and the other parent." Judd, 53 Va. App. at 588, 673 S.E.2d at 918 (quoting Stockdale v. Stockdale, 33 Va. App. 179, 184, 532 S.E.2d 332, 335 (2000)).

The trial court stated that father "will suffer an impairment in his relationship with the children if he remains 3,000 miles apart from them, but his relationship will not be 'substantially impaired' within the meaning of the controlling case law." The trial court encouraged father to follow the family to California, as he has followed mother wherever the Navy sent her in the past. However, father told the trial court that he did not intend to move to California because it was expensive and he did not have a job there. The trial court, then, held that father could visit with the children in Virginia for the summer. He could have "unlimited telephone and

- 7 -

FaceTime/Skype visitation," and he could have reasonable and liberal visitation with the children in California. Father, on the other hand, states that he "has an intense fear of flying" and would not go to California to exercise his visitation. He also questions how the children, ages nine, six, and one, would travel to and from Virginia, if he will not accompany them on a plane. Based on father's arguments, it is apparent that his fears, not the trial court, are preventing him from visiting with his children.

> The added difficulty in maintaining the parental relationship is not unique to this case. It is common to all parents whose children live some distance away. This increased difficulty alone should not be allowed to deny a custodial parent the freedom to choose where he or she and the children will reside. To hold otherwise would give a non-custodial parent the option of cho[o]sing the residence of a custodial parent.

Scinaldi v. Scinaldi, 2 Va. App. 571, 575, 347 S.E.2d 149, 151 (1986). "Therefore, the added difficulty in maintaining a beneficial relationship between a child and a non-custodial parent should not be the sole basis for restricting a custodial parent's residence except where the benefits of the relationship cannot be substantially maintained if the child is moved away from the non-custodial parent." Id.

The trial court did not err in holding that father's relationship with his children would not be substantially impaired by the relocation. If father chose not to follow the family to California, then the trial court provided for extensive in-person visitation, as well as telephonic and electronic visitation, in order for him to maintain his relationship with the children.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.