COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Malveaux and Causey
Argued at Salem, Virginia


SARA JOANNE MARTIN

v.       Record No. 0013-22-3

PHILIP MARTIN AND
  DONNA MARTIN

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
DECEMBER 20, 2022

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

Hilary S. Mariano (Christopher S. Potter; Phillip R. Lingafelt,
Guardian *ad litem* for the minor children; Potter, Mariano &
Jennings; Glenn Feldmann, on briefs), for appellant.

Seth C. Weston (Law Office of Seth C. Weston, PLC, on brief), for
appellees.


Sara Martin ("mother") appeals from the circuit court's December 1, 2021 visitation

order.  In that order, the circuit court awarded visitation with the two minor children to appellees

Philip Martin and Donna Martin (the children's paternal grandparents) under Code

§ 20-124.2(B2).  That order also included a provision allowing the children's paternal aunt (the

appellees' daughter) to be present during the children's visitation with their grandparents after

June 1, 2022, and mother objected to that provision.  On appeal, mother argues that the circuit

court erred in awarding visitation over the mother's objection that the paternal aunt should not be

allowed to be present at the children's visitation with their grandparents—and that the circuit

court "erred in its application of [Code] § 20-124.2(B2) to this case."  She also contends that the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

circuit court "erred in awarding visitation to a non-parent who had not intervened in the suit"—specifically, the children's paternal aunt.

## I.  BACKGROUND[1]

"Under settled principles of appellate review, we view the evidence in the light most favorable to the grandparents, as the party prevailing below." *Rhodes v. Lang*, 66 Va. App. 702, 704 (2016) (citing *Chretien v. Chretien*, 53 Va. App. 200, 202 (2008)).  Consequently, we grant to the grandparents "all reasonable inferences fairly deducible therefrom." *Anderson v. Anderson*, 29 Va. App. 673, 678 (1999).  Mother and Todd Martin ("father") married, and they had two children together between 2008 and 2010.  They subsequently divorced.  Father passed away in July 2020, leaving mother as the sole surviving parent of their two minor children.

Erin Martin ("Aunt Erin"), the children's paternal aunt, testified that father fostered a relationship between his children and his parents Philip and Donna Martin (collectively the "grandparents," individually "grandfather" and "grandmother" respectively) before he died and that he would have wanted the grandparents to continue to have time—and visitation—with the children after his death.  According to grandfather, the grandparents had been involved in the children's lives since the day the children were born and neither mother nor father had expressed concerns about the grandparents spending time with the children.

After father died, mother and Aunt Erin (who became the administrator of father's estate) began arguing over financial issues pertaining to father's estate and the life insurance for the children.  Aunt Erin testified that she had attorneys write letters concerning the life insurance

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues mother has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion.  Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

payouts that were due to the children in order "to ensure that the money that [she] believe[d] rightly belonged to the children went for their benefit." Mother, however, believed that she should have rights regarding the money from her former husband's life insurance policy and also claimed that Aunt Erin was undermining her parental authority. In the months following father's death, mother prohibited Aunt Erin from seeing the children until the financial issues were resolved to mother's satisfaction. Mother, however, continued to allow the children to visit with the grandparents—as long as Aunt Erin was not present during those visits.

The grandparents complied with mother's terms although they did not agree that the children would be negatively affected in any way by Aunt Erin. Grandfather suffers from a terminal illness, and Aunt Erin—the grandparents' only living child—would often spend four to five days each week at the grandparents' home "helping to take care of them, doing grocery shopping, fixing things around the house, cooking, cleaning, [and] helping." Grandmother also expressed distress at mother's terms because she did not want to have to choose between having her daughter (her only remaining living child) around and being able to see her grandchildren.

Sometime later, however, mother told the grandparents that they also could not see the children until the financial issues were resolved. Shortly afterwards, the grandparents filed a petition for visitation with the children, which the City of Roanoke Juvenile and Domestic Relations District Court granted. Mother appealed to the circuit court, and a hearing was held on November 1, 2021.

At the hearing before the Circuit Court of the City of Roanoke, mother did not object to the children having visitation with the grandparents themselves. Instead, she stated that she had "two reasonable requests in order for there to be visitation" with the grandparents. Mother's lawyer stated, "Number one is no alcohol. . . . And number two is she does not want Erin Martin

- 3 -

around her children."[2] Mother testified that she "believe[d] that the children should have a relationship with their grandparents," but that Aunt Erin made it impossible for the grandparents and mother to work out a visitation schedule "because she [Aunt Erin] refuses to not be there." Mother also expressed concerns regarding the children's awareness of the situation. She testified that the children had become aware of the disagreements between mother and Aunt Erin after Aunt Erin sent a text message to one of the children, and mother testified that the disagreement in the family was causing the children stress. However, mother admitted that the children still wanted to see their grandparents—and agreed that she was fine with the children spending time with their grandparents.

Aunt Erin testified that she adored the children. She believed that the children "should have every bit of love that is available to them" and that they needed a connection with the grandparents (and with her since she was such a large part of the grandparents' lives) so that the children could maintain some connection to their father.

The children's guardian *ad litem* informed the circuit court that the children had left him a voicemail message "and indicated they would prefer not to see her [Aunt Erin] when they visit the grandparents." According to the guardian *ad litem*, the children are "both concerned about the impact that this [dispute] is having on their mother." The guardian *ad litem* requested that the circuit court craft a visitation order that would take into account the children's preferences concerning Aunt Erin—although he did also state that "[t]here may be a time later on when the aunt can come back into the picture."

After hearing testimony, the trial judge found that the children were "obviously loved by many people" and that there was no evidence that mother, the grandparents, or Aunt Erin threatened the children's health and safety. The trial judge then explained, "I have absolutely no

---

[2] The circuit court granted mother's request concerning the consumption of alcohol in the presence of the children. The grandparents do not take issue with that condition.

trouble at all granting the grandparents['] request for visitation.  They have asked for that.  They are entitled to it and I have heard nothing from Ms. Sara Martin, or otherwise, indicating that that request should not be granted."  Consequently, the circuit court granted the grandparents' request for visitation pursuant to Code § 20-124.2(B2)—giving the grandparents one weekend per month with the children and one week with them in the summer.

At trial, the judge noted generally that "[u]ltimately it is the biological mother's judgment, and the Court is loath[] to try and second guess a biological mother's judgment as to something that is undermining his or her decisions and judgment as a parent."  The trial judge also found that it was "affirmatively harming these kids to have them keep coming back to court and trying to figure out what's going on and dancing on eggshells around [the] four people that they love."  Consequently, although the trial judge recognized that Aunt Erin was not a party before the circuit court, the trial judge decided "to try as best I can" to give the parties a final ruling.

Without any further explanation or discussion of the best interests of the children, the circuit court then ruled that, beginning June 1, 2022, "insofar as the grandparents' visitation is concerned, Erin may be present during that visitation, only after June 1st [2022]."  The circuit court made clear that this condition on the grandparents' visitation did not amount to granting Aunt Erin visitation—and that if she wanted to have visitation with the children, she would then need to come back to the court herself.  The circuit court noted mother's objection "as to allowing Erin Martin's involvement after June 1st."  Mother now appeals.

II.  ANALYSIS

On appeal, mother's assignments of error challenge the legal standard that the circuit court applied to the grandparents' petition for visitation.  The circuit court's conclusions as to questions of law are subject to *de novo* review, *Rusty's Welding Serv., Inc. v. Gibson*, 29

Va. App. 119, 127 (1999) (en banc), while its "factual findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support them," *Mayer v. Corso-Mayer*, 62 Va. App. 713, 728 (2014) (quoting *Mullin v. Mullin*, 45 Va. App. 289, 299 (2005)); *see also Quantum Development Co., Inc. v. Luckett*, 242 Va. 159, 161 (1991).

A. The Circuit Court Is Clear That It Only Awarded Visitation to the Grandparents

We must first address the question of to whom the circuit court awarded visitation. On appeal, mother contends that the circuit court "erred in awarding visitation to a non-parent [Aunt Erin] who had not intervened in the suit or was not otherwise properly before the court." The circuit court correctly acknowledged that Aunt Erin was not a party to the case before the court, stating that "Ms. Erin Martin is trying to request visitation and she's not here." Contrary to mother's argument, however, the circuit court did *not* award visitation to Aunt Erin. In fact, the circuit court made clear that it was not granting Aunt Erin visitation and emphasized, "If she wants her own visitation, she needs to come back to the court." It then awarded visitation to the grandparents and *imposed conditions* on how the grandparents could exercise their visitation. One of those conditions was that "insofar as the grandparents' visitation is concerned, Erin may be present during that visitation, only after June 1st [2022]." Therefore, only the grandparents— not Aunt Erin—were awarded visitation with their grandchildren.

Mother also contends that the circuit court "erred in awarding visitation to non-parents over the mother's objection." It is not clear from her briefs on appeal whether, in using the term "non-parents," mother means to refer exclusively to either the grandparents or Aunt Erin, or to both simultaneously. However, to the extent that mother's contention that the circuit court "erred in awarding visitation to non-parents" refers to Aunt Erin, we do not address that claimed error because the circuit court did not award Aunt Erin visitation with mother's minor children. *See* Rule 5A:20(c)(2) ("An assignment of error that does not address the findings, rulings, or

- 6 -

failures to rule on issues in the trial court . . . is not sufficient."); *see, e.g.*, *Geouge v. Traylor*, 68 Va. App. 343, 373 (2017) ("Because Geouge has assigned error to a ruling that the circuit court did not make, the circuit court could not and did not err in the manner alleged by [appellant] in the assignment of error. Thus, we cannot take cognizance of the claimed error.").

### B. Code § 20-124.2(B2) and the Circuit Court's Award of Visitation to the Grandparents

To the extent that mother's assignments of error address the conditions that the circuit court imposed on the award of visitation to the grandparents, we are left to determine whether the circuit court's decision complied with Virginia law. Because the circuit court awarded visitation to the grandparents "pursuant to Virginia Code § 20-124.2(B2)," we must employ established principles of statutory construction to resolve this case. The Supreme Court has held that when analyzing a statute "the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, [and] that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity." *City of Virginia Beach v. ESG Enters., Inc.*, 243 Va. 149, 152 (1992) (quoting *Barr v. Town and Country Properties*, 240 Va. 292, 295 (1990)). "[T]he 'words of a statute should be given "their common, ordinary and accepted meaning" absent a contrary intent by the legislature.'" *Kane v. Szymczak*, 41 Va. App. 365, 371 (2003) (quoting *Mouberry v. Commonwealth*, 39 Va. App. 576, 583 (2003)). In addition, as the Supreme Court has stated, "Virginia courts 'presume that the legislature chose, with care, the words it used when it enacted the relevant statute,'" *Tvardek v. Powhatan Village Homeowners Ass'n, Inc.*, 291 Va. 269, 277 (2016) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011)), and "[t]he act of choosing carefully some words necessarily implies others are omitted with equal care," *Rickman v. Commonwealth*, 294 Va. 531, 540 n.3 (2017) (quoting *Central Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield*, 42 Va. App. 264, 280 (2004)); *see also Kane*, 41 Va. App. at 371-72. However, courts "have a duty

to construe statutes subject to a constitutional challenge in a manner that 'avoid[s] any conflict with the Constitution.'" *Copeland v. Todd*, 282 Va. 183, 193 (2011) (alteration in original) (quoting *Commonwealth v. Doe*, 278 Va. 223, 229 (2009)).

The provision under which the circuit court awarded visitation to the grandparents, Code § 20-124.2(B2), is a newly enacted subsection of Code § 20-124.2 that became effective July 1, 2021. 2021 Va. Acts Spec. Sess. I ch. 253. Code § 20-124.2(B2) provides:

> In any case or proceeding in which a grandparent has petitioned the court for visitation with a minor grandchild, and a natural or adoptive parent of the minor grandchild is deceased or incapacitated, the grandparent who is related to such deceased or incapacitated parent shall be permitted to introduce evidence of such parent's consent to visitation with the grandparent, in accordance with the rules of evidence. If the parent's consent is proven by a preponderance of the evidence, the court may then determine if grandparent visitation is in the best interest of the minor grandchild.

In contrast to Code § 20-124.2(B),[3] which deals with the court's authority to grant visitation to nonparents generally, Code § 20-124.2(B2) carves out a narrow and specific subset of nonparents to whom different requirements apply. This subset of nonparents ("qualifying grandparents") includes only those grandparents who petition for visitation with their minor grandchild and are parents to that child's deceased or incapacitated parent. Code § 20-124.2(B2). If the petitioning nonparent does not meet these strict requirements, then that person cannot petition for visitation under Code § 20-124.2(B2) and must, instead, satisfy the requirements for visitation under Code § 20-124.2(B).

According to the plain language of Code § 20-124.2(B2), trial courts may only award visitation to qualifying grandparents if two requirements are met. First, and as a condition

---

[3] In relevant part, Code § 20-124.2(B) provides, "The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest."

precedent, the trial court must find by a preponderance of the evidence that the child's deceased

or incapacitated parent had essentially consented to visitation with the qualifying grandparents.

Code § 20-124.2(B2).[4]  Second, the trial court must determine whether "grandparent visitation is

in the best interest of the minor grandchild."  *Id.*

## C.  The Best Interests of the Children

On appeal, mother raises arguments concerning the constitutionality of Code

§ 20-124.2(B2).  However, assuming without deciding that Code § 20-124.2(B2) is

constitutional, we hold that the circuit court erred by not actually and clearly considering the

statutory factors under Code § 20-124.3 in conducting its best interests analysis, and we thus

conclude that the circuit court did not satisfy the basic requirements of the statute.[5]  Given that

---

[4] The grandparents certainly presented considerable evidence at the hearing showing that father, the deceased parent in this case, would have wanted his children to have visitation with his parents.  Father heavily involved the grandparents in the children's lives, including after he divorced mother, allowing the grandparents to watch and care for the children.  Furthermore, Aunt Erin testified, without objection, that father would have wanted the grandparents to continue to have time—and visitation—with his children after he died.

In addition, mother has never argued that father did not want the children to have visitation with the grandparents.  Instead, she now assigns as error on appeal that "the grandparents failed to prove, by a preponderance of the evidence, the deceased parent's consent to non-parent visitation over the mother's objection."  However, Code § 20-124.2(B2) does not require the grandparents to show that the children's deceased father consented to his children's visitation with his parents *over the objections of father's ex-wife*.  *See Jackson v. Fid. & Deposit Co. of Md.*, 269 Va. 303, 313 (2005).  In short, an objection by the surviving parent to a visitation with the qualifying grandparents is not relevant to the requirement in Code § 20-124.2(B2) that the deceased parent would have consented to his children's visitation with the grandparents.

[5] Because we hold that the circuit court did not satisfy the basic requirements of the statute itself, we resolve mother's appeal on statutory grounds and, therefore, do not reach mother's constitutional arguments on appeal.  *See Commonwealth v. Swann*, 290 Va. 194, 196-97 (2015) ("The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'  A fundamental and longstanding precept of this doctrine is that 'unnecessary adjudication of a constitutional issue' should be avoided." (first quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010); then quoting *Bell v. Commonwealth*, 264 Va. 172, 203 (2002))); *Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 193 (1909) (explaining that "[w]here a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued").  Furthermore, mother's position in the

the circuit court concluded that father consented to visitation with the grandparents, Code

§ 20-124.2(B2) requires the circuit court next to consider whether "grandparent visitation is in

the best interest of the minor grandchild." *Cf. Stadter v. Siperko*, 52 Va. App. 81, 88 (2008) ("In

matters of custody, visitation, and related child care issues, the court's paramount concern is

always the best interests of the child." (quoting *Farley v. Farley*, 9 Va. App. 326, 327-28

(1990))). "In determining [the] best interests of a child for purposes of determining custody or

visitation arrangements, including any pendente lite orders pursuant to [Code] § 20-103, the

court shall consider" the factors listed in Code § 20-124.3. Code § 20-124.3; *see, e.g.*, *Cloutier

v. Queen*, 35 Va. App. 413, 424-25 (2001) (linking the requirement in Code § 20-124.2(B) that

trial courts "give primary consideration to the best interests of the child" with the factors set out

in Code § 20-124.3). Given that Code § 20-124.2(B2) requires the trial court to determine the

best interests of a child for the purposes of determining visitation, the court must consider the

statutory factors listed in Code § 20-124.3. [6]

circuit court and in her briefs on appeal has been that she does not object to visitation of the
children with their grandparents (only to Aunt Erin being present during that visitation).
Because of mother's acquiescence with visitation by the children with their grandparents per se,
mother has no basis for arguing that the statute that allows such visitation with the grandparents
is unconstitutional. Appellate courts do not issue advisory opinions on an issue that is not in
actual controversy before that appellate court. *Commonwealth v. Harley*, 256 Va. 216, 219-20
(1998) ("[T]he courts are not constituted . . . to render advisory opinions . . . ." (second alteration
in original) (quoting *City of Fairfax v. Shanklin*, 205 Va. 227, 229-30 (1964))).

[6] The cases on which mother relies in her brief are distinguishable on the facts of those
cases from the case presently before this Court. Here, mother contends that the circuit court first
needed to "find that a denial of visitation would be detrimental to the children's welfare before
infringing upon the mother's fundamental parental rights" (and before conducting a best interests
analysis). However, in contrast to the parents in the cases upon which mother relies in her briefs
to this Court, mother here had not actually objected (either below in the trial court or in her briefs
on appeal) to the grandparents having visitation with the children in this case—a fact which she
confirmed at oral argument before this Court. In contrast, in *Williams v. Williams*, 256 Va. 19,
19 (1998), that Court dealt with two living and fit parents who *both* objected to the children's
paternal grandparents having visitation with their daughter. Furthermore, in *Griffin v. Griffin*, 41
Va. App. 77, 79-82 (2003), the Court was dealing with a parent's objection to her estranged
husband—who was not the child's father or grandparent—having visitation with her son. Here,

- 10 -

Code § 20-124.3 also requires that the trial judge "communicate to the parties the basis of the decision either orally or in writing" such that this communication "set[s] forth the judge's findings regarding the relevant factors set forth in this section." This statutory mandate requires the trial court to "identify the fundamental, predominating reason or reasons underlying its decision." *Kane*, 41 Va. App. at 372-73. The trial court does not need to "provid[e] comprehensive findings of fact and conclusions of law," *Lanzalotti v. Lanzalotti*, 41 Va. App. 550, 555 (2003), or to "quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors," *id.* (quoting *Kane*, 41 Va. App. at 373). However, it "must provide a case-specific explanation (one that finds its contextual meaning from the evidence before the court) of the fundamental, predominating reason or reasons for the decision." *Kane*, 41 Va. App. at 373; *see also*, *Artis v. Jones*, 52 Va. App. 356, 363 (2008); *Rainey v. Rainey*, 74 Va. App. 359, 379 (2022).

Although the court must consider the factors listed in Code § 20-124.3, it only needs to expressly communicate its findings regarding the factors it finds to be relevant. Several of the factors listed in Code § 20-124.3 are certainly relevant here. *See, e.g.*, Code § 20-124.3(4) ("The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers, and extended family members."); -124.3(7) (dealing with the ability of the parties to cooperate with each other and resolve disputes in matters affecting the child); -124.3(8) ("The reasonable preference of the child, if the court deems the

however, mother's attorney told the circuit court that mother simply had "two reasonable requests in order for there to be visitation" with the grandparents—"[n]umber one is no alcohol . . . [a]nd number two is she does not want Erin Martin around her children." The circuit court also found that "both the decedent, *as well as Ms.* [*Sara*] *Martin*, don't have any trouble with the kids seeing the grandparents," and mother did not object to that finding of fact. Indeed, mother herself testified, "I believe that the children should have a relationship with their grandparents," and she agreed that she was fine with her children spending time with the grandparents. Consequently, the facts in *Williams* and *Griffin* are quite different than the situation in this case now before us, and, regardless, mother did not object to visitation with the grandparents themselves.

child to be of reasonable intelligence, understanding, age, and experience to express such a preference."); -124.3(10) ("Such other factors as the court deems necessary and proper to the determination."). Furthermore, in cases where a nonparent has petitioned for visitation and a fit parent has made a determination as to the children's best interests, the circuit court must also give that determination appropriate weight. *See Stadter*, 52 Va. App. at 89 ("[T]here is a presumption that fit parents act in the best interests of their children." (quoting *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000))).

However, given the evidence in the record and the trial judge's statements from the bench, it is not clear at all whether the circuit court actually considered the statutory factors under Code § 20-124.3 in determining the best interests of the children as it relates to the specific issue in dispute in this case—i.e., whether Aunt Erin could be present at the children's visitation with the grandparents. Although mother stated that she "believe[d] that the children should have a relationship with their grandparents" and did not object to the children having visitation with the grandparents themselves,[7] mother clearly expressed that she did not want Aunt Erin to have contact with the children during that visitation. The children had also expressed their

---

[7] According to mother's attorney at oral argument before this Court, mother has recently decided that she now no longer wishes for the grandparents to have any visitation with the children. However, this new position was brought to this Court's attention for the first time at oral argument in response to a question from the Court. Because this was not the position mother took in the circuit court, the fact that mother now objects on appeal to the grandparents' having any visitation cannot be considered by this Court on appeal. *See Oliver v. Commonwealth*, 35 Va. App. 286, 296-97 (2001) ("Our review of an appeal is restricted to the record. 'An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record.'" (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993))). C*f. Albert v. Albert*, 38 Va. App. 284, 291 n.2 (2002) (noting that "the appellate court is limited to the record before it and cannot consider documents that were not submitted to the trial court" (citing *John v. Im*, 263 Va. 315, 320 (2002))). Parties also cannot take one position in the trial court and then another different position on appeal, especially for the first time at oral argument on appeal. *See Cangiano v. LSH Bldg. Co., LLC*, 271 Va. 171, 181 (2006) ("A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.").

preferences, through the guardian *ad litem*, that they did not want Aunt Erin around when they visited the grandparents. *See* Code § 20-124.3(8).

Although evidence in the record may well support the conclusion that it is in the children's best interests to allow Aunt Erin to be present during the children's visitation with the grandparents, we are unable to discern on appeal the reasons for this decision because the circuit court failed to provide a useful explanation under the Code § 20-124.3 factors of the "predominating reason or reasons underlying its decision" regarding the children's best interests. *Kane*, 41 Va. App. at 372-73; *see also id.* at 374 ("If the parties must infer the reasons, it is probably because the judge did not communicate them directly."). The only explanation that the circuit court provided for its decision to allow Aunt Erin to be present during the children's visitation after June 1, 2022, was just a finding that it was "affirmatively harming these kids to have them keep coming back to court and trying to figure out what's going on and dancing on eggshells around [the] four people." Although this finding is certainly something that the circuit court can consider (although counsel confirmed that the children themselves were not ever present in court), it does not address the larger point that all parties agreed was really the only contested issue in this case—i.e., whether it was in the children's best interests for Aunt Erin to be allowed to be present during the children's visitation with the grandparents. *See Kane*, 41 Va. App. at 373. In short, the circuit court simply did not provide a real, *case-specific* explanation at trial that addresses the fundamental, predominating reason or reasons for its decision that allowing Aunt Erin to be present after June 1, 2022, during the children's visitation with the grandparents was in the best interests of these children. *See id.*

Consequently, because the circuit court failed to satisfy the basic requirements of the statute in determining (and then stating) what the best interests of the children here are, we reverse and remand this matter to the circuit court for it to consider the statutory factors in Code

§ 20-124.3; for the circuit court to then make a finding on the best interests of each child as it pertains to whether Aunt Erin should be allowed to be present during the children's visitation with the grandparents; and for the circuit court to provide the parties with an explanation for its decision specific to this case.

## III. CONCLUSION

For the foregoing reasons, we find that the circuit court erred and we reverse and remand to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*