COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Annunziata and Humphreys
Argued at Alexandria, Virginia


OSCAR GLENN GOODHAND
                                              OPINION BY
v.   Record No. 2525-00-4           JUDGE ROBERT J. HUMPHREYS
                                          MARCH 5, 2002
DAWNIE KILDOO, F/K/A
 DAWNIE GOODHAND


             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     M. Langhorne Keith, Judge

          John M. Tran (Tobin, O'Connor & Ewing,  on
          briefs), for appellant.

          Matthew W. Greene (Kevin E. Smith; Smith &
          Greene, P.L.L.C., on brief), for appellee.


     Oscar Glenn Goodhand ("father") appeals from the decision

of the Circuit Court of Fairfax County allowing his former wife,

Dawnie Kildoo ("mother"), to relocate to Arizona with the

parties' minor child.  Father contends the trial court erred in

weighing the factors necessary to determine whether the

relocation was in the child's best interests, and in failing to

appropriately consider the harmful impact on the child which

would be caused by the relocation.  We disagree and affirm the

decision of the trial court.

                      I.  Background

     We review the evidence in the light most favorable to

mother, the party prevailing below, and grant her all reasonable

inferences fairly deducible from the evidence viewed in that light.[1]  So viewed, the evidence presented in the trial court established that father and mother were married on August 8, 1978.  Three children were born of the marriage.

In 1998, the parties separated.  They were granted a divorce on June 30, 1999.  Pursuant to an agreed custody order, incorporated into the final decree of divorce, the parties shared joint custody of their youngest child, Sydney.  Mother maintained primary physical custody during the school year, and father maintained primary physical custody during Sydney's summer vacation.  Father also had custody of Sydney for several weekends and holidays during the school year.

At the time of the divorce, the parties maintained a joint dental practice located in McLean, Virginia.  Due to the parties' inability to work together after the divorce, mother sold her portion of the practice.  The terms of the sale subjected mother to a non-compete clause encompassing a ten-mile radius from the practice location.  Mother had not relocated her practice as of the time of the hearing.

In December of 1999, mother married Carew Papritz. Papritz, who worked as a ranch foreman and as a writer in

---

[1] See Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).

-

Arizona, relocated to Virginia after the marriage. However, after three months, he returned to his job in Arizona. Subsequently, on July 10, 2000, mother filed a motion for change of custody with the court, requesting that she be allowed to relocate Sydney to Arizona for the following school year and that father's existing visitation schedule be modified so that Sydney could attend school without interruption.

During a two-day hearing, the trial court heard and considered testimony from eleven witnesses and conducted an <u>in camera</u> interview with Sydney. Testimony established that before their separation, the parties had assumed assigned roles for the care of their children. Mother was responsible for discipline, hygiene, and basic structure in the home, as well as for preparing most of the meals for the family. Father often fed the children their breakfast and transported them to school. In addition, father was very involved in the children's extra-curricular activities. Father maintained his involvement with these activities after the divorce.

Testimony also established that in November of 1999, the parties agreed to send Sydney to a psychologist, Dr. Guy Van Syckle. Dr. Van Syckle treated Sydney as often as once a week from November 1999 up to the time of the hearing. He testified that he observed Sydney to be a confident and well-adjusted child. He further stated that Sydney wanted to spend more "fun

-

time" with her mother, that she wanted to spend more time with her father, and that she is "well-attached to both parents."

Dr. Van Syckle opined that it would be easier for Sydney to relocate when she got older and testified that Sydney "wants to stay here." He stated that he felt if Sydney was relocated, she would feel like no one had heard her and that this would "depress her." Finally, Dr. Van Sykle opined that a mere physical separation between Sydney and one of her parents might "potentially" hurt the bond between her and that particular parent, but that it might not affect the relationship at all. He further conceded that he had not completed a custody evaluation, that he had no direct observation of the different home situations, and that he had observed interactions with Sydney and her parents on few occasions.

At the close of the evidence, the trial court articulated its findings with respect to the factors enumerated in Code § 20-124.3 as follows:

> Relocation cases . . . are still custody cases. They are special custody cases, but they are, I think, still informed [sic] by Section 20-124.3. And I think the Court has to consider each of the factors in that section in making the decision.
>
> The parties agree that there has been a material change of circumstances, so the question then becomes what is the best interests of Sydney in determining this custody issue. Of course, the Court is well-aware that whatever its decision is, is going to have a major impact on one of the parents. But I think the cases are quite

-

clear that what the Court has to consider is the best interest of the child.

So going through the factors, factor number one . . . I don't think that factor favors one parent or the other . . . .

Factor two . . . [a]gain, I think that's a neutral factor . . . .

The third factor . . . I think that factor favors the mother, although it is very clear that the father has very positive involvement with the child's life.  But I think the mother - credibility of the mother's testimony concerning the assessment of the child's needs was more persuasive, I think, in particular, in the evidence concerning or the testimony concerning the shared custody.  The father thought it was fine and would continue to be fine even though he said change was something that should be eliminated if possible, whereas the mother testified that the shared custody was - I think her term was horrible.  And I think she can assess the child's needs as to that more accurately.  So that factor favors the mother.

The needs of the child, factor four . . . [o]bviously, the child needs to continue to have a relationship with both parents and her siblings to the extent she can . . . [b]ut again, the needs of the child don't really favor one parent or the other . . . .

The fifth factor . . . I think here the evidence is persuasive to the Court that the mother has been the primary care-giver during this child's ten-year life, which is not to say that the father hasn't played a significant role.  But the mother's role has been, I think, primary.  And I think that is the one of the major factors that informed the Court's decision.

Sixth . . . I think on balance that its very clear from the testimony of both the mother and the father that they support the child's relationship with the other parent, although they are unable to work together it seems in almost any way because of their difficulties in communicating. But, again, that is a neutral factor. And I don't find that either parent has tried to alienate the child or not supported the child's contact and relationship with the other parent.

The relative willingness and demonstrated ability of each parent to maintain a close and continual relationship with the child. Again, the evidence was quite clear that both parents demonstrated that both as well as any I have seen in any such custody case . . . . The ability of each parent to coordinate and resolve disputes was conceded, although the father thought it was better. But it was conceded in opening statements that this is a real problem and not a problem that is likely to be resolved.

Eighth . . . [t]he Court deemed the child to be of reasonable intelligence in age and experience to express such a preference. . . . And in this factor, I think is a factor that supports the father. Sydney clearly wants to stay here in McLean. Some of that preference, I believe, after talking with her is as much apprehension or unwillingness to leave the familiar surroundings as it is a choice between mom and dad . . . [a]nd I suspect without having her tell me this, that if it was placed in that stark term of having to choose between mom and dad that Sydney's choice would be much like Sophie's choice, an impossible choice. But I do take that into consideration in trying to make this decision.

-

But having gone through all of the factors,
I think the factors favor the mother in this
case. . . . [2]

(Footnote added.)

## II.  Analysis

We note that when a court hears evidence at an ore tenus

hearing, its decision is entitled to great weight and will not

be disturbed on appeal unless plainly wrong or without evidence

to support it.[3]  However, the burden is on the moving party to

show a right to the relief sought.[4]  Thus, if the moving party

fails to meet his or her burden of proof, the trial court

maintains the discretion to deny a motion to modify custody.[5]

The moving party must establish that modification of

custody is in the best interests of the child.[6]

> In Virginia, the law is clear that the "best
> interests of the [child] controls the issue
> of a change of custody or the issue of a
> custodial parent moving the [child] to
> another state."  The court may consider a

---

[2] Although the court did not indicate that it considered
factors nine and ten, evidence applicable to these factors was
presented during the hearing.  In addition, neither party has
raised any issue concerning the failure of the court to
enunciate its findings pertaining to these factors on appeal.

[3] Piatt v. Piatt, 27 Va. App. 426, 432, 499 S.E.2d 567, 570
(1998).

[4] Hughes v. Gentry, 18 Va. App. 318, 326, 443 S.E.2d 448,
453 (1994).

[5] See Bostick v. Bostick-Bennett, 23 Va. App. 527, 478
S.E.2d 319 (1996).

[6] Id. at 535, 478 S.E.2d at 323.

-

benefit to the parent from relocation only if the move independently benefits the [child].[7]

Accordingly,

[i]f the trial court finds that relocation is not in the "best interests of the child," the trial court must deny the relocation request. If maintaining the status quo is in the "best interests of the child," the court shall deny any requests to change custody and order that the status quo be maintained.[8]

In reaching a decision on the "best interests of the child," the court is guided by Code § 20-124.3.[9] Failure to consider all the factors set out in Code § 20-124.3 is reversible error.[10] However, "[a]s long as the trial court examines the factors, it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'"[11] The trial court's evaluation of the best interests of the child will not be disturbed on appeal if the findings of the court are supported by credible

---

[7] Cloutier v. Queen, 35 Va. App. 413, 430, 545 S.E.2d 574, 583 (2001) (quoting Simmons v. Simmons, 1 Va. App. 358, 362, 339 S.E.2d 198, 200 (1986)).

[8] Id. at 423-24, 545 S.E.2d at 579.

[9] Id. at 427, 545 S.E.2d at 581.

[10] Id. at 425, 545 S.E.2d at 580.

[11] Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)) (emphasis added).

-

evidence.[12]  Father first contends that the trial court erred in its weighing of the factor concerning Sydney's preference, and in its findings on several of the remaining factors.  We disagree.

Despite father's contention to the contrary, it is clear that the court did not ignore Sydney's preference to stay in Virginia and/or to spend more time with her father.  Indeed, the court heard testimony concerning Sydney's preference and even spoke with Sydney about her preference in chambers.  The court also heard the testimony and recommendations of Sydney's psychologist.  The court then carefully considered this information, as well as Sydney's ability to competently express her preference, and the motivation underlying it, in finding the factor encompassing this aspect of the analysis to favor father.  Nevertheless, the wishes of the child are but one factor to be considered in making the best interest determination.[13]  Furthermore, it is well established that the trier of fact ascertains witness credibility, determines the weight to be given their testimony, and has the discretion to accept or reject any of the witness' testimony.[14]  Here, the record

_____

[12] See Walker v. Fagg, 11 Va. App. 581, 586, 400 S.E.2d 208, 211 (1991).

[13] See Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986).

[14] Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc).

-

demonstrates that evidence was presented concerning the other relevant factors, including mother and father's ability to assess and meet Sydney's various needs, the various levels of care each parent provided to Sydney, and the amenities available to Sydney in both Virginia and Arizona. As stated above, it is the trier of fact who determines the credibility and weight of the evidence. Thus, despite father's contention otherwise, we find no error in the court's findings in favor of mother on these issues.

In addition, despite the parties' admitted difficulties in communicating with one another concerning their daughter, we find no evidence in the record to establish that mother unreasonably denied father's access to Sydney. In fact, the record reveals that mother adhered to the parties' custody order concerning visitation and that she often granted father visitation above and beyond that which was required by the order. Thus, we likewise find no error in the court's determination on this factor.

Father next contends that the trial court erred by "mechanically" weighing the factors enunciated in Code § 20-124.3, and failing to consider the burden of proof. Specifically, he states that the focus should be on the effect the removal from her state of residence will have on the child and not solely on the issue of who is the better person to have custody. Accordingly, father contends that, in cases of shared

or joint custody, the court should impose a presumption of harm when a parent proposes to move a child a "far distance," in cases of joint custody.

Although father is correct that it is the moving party who bears the burden of proof in cases of a change in custody or relocation,[15] we find no evidence in the record to support his allegation that the trial court failed to consider the burden of proof. Moreover, we find no authority for father's proposition that there should be a presumption of harm in cases involving relocation and joint or shared custody. To the contrary, Virginia law simply requires the court to consider and weigh the necessary factors in order to determine both whether a change in custody is in the best interest of the child, and whether relocation is in the best interest of the child. While it is true that in relocation matters, the moving party also bears the burden of proving that relocation will not cause a "substantial impairment" to the relationship between the non-moving parent and the child, we see no reference in the record, nor does father point to any, that the court improperly placed the burden on this issue and/or failed to consider it. Indeed, mother called Dr. Van Syckle who testified as to the potential impact of relocation on the relationship between Sydney and father, opining that the move "might" hurt the bond, but also, that it

---

[15] Cloutier, 35 Va. App. at 427, 545 S.E.2d at 581.

might not affect the relationship at all. Thus, it is clear that the trial court properly considered the issue.

Finally, father contends the trial court erred in finding that the relocation would be in Sydney's best interests. Again, we disagree. The strength of father's devotion to Sydney, although laudable, does not alone determine her best interest.[16] Here, there was ample evidence presented from which the court could consider both parents' devotion to their daughter, as well as the necessary factors in determining what was ultimately in her best interest. Finally, there was no evidence that the benefits of father's relationship with Sydney could not be maintained while she lived in Arizona during the school year. In fact, the evidence presented suggested that the relationship might not be affected at all.

Accordingly, since credible evidence supported the factual determinations of the trial court, we find no grounds to reverse the trial court's exercise of its discretionary authority. Thus, the decision of the court is affirmed.

Affirmed.

---

[16] See Scinaldi v. Scinaldi, 2 Va. App. 571, 575, 347 S.E.2d 149, 151 (1986).