## CIRCUIT COURT OF ROANOKE COUNTY

Rusty Allen Rupert

v.

English Bruce (Rupert) Callahan

In re Rio Rojan Rupert

November 19, 2014

Case No. CJ14-76

BY JUDGE JAMES R. SWANSON

These cases present on appeal from the Roanoke County Juvenile & Domestic Relations District Court, wherein they had been commenced by (i) petition for custody filed by Mr. Rupert, and (ii) petition for leave to relocate with the child to Tennessee filed by Ms. Callahan. By agreement of the parties, the cases were consolidated for trial in this Court.

The consolidated cases were heard on October 14, 2014, and October 17, 2014. In making the determinations that follow, the Court has considered the evidence presented, the testimony and demeanor of the witnesses, and the provisions of all relevant statutes, including Va. Code §§ 20-124.2 and 20-124.3. The Court has also had the benefit of the written closing arguments submitted by counsel for each party.

On October 27, 2014, counsel for Mr. Rupert filed an "Objection to Respondent's Closing Argument." After consideration of same, the objection is overruled.

*Facts*

Rio Rojan Rupert was born to the marriage of Rusty Allen Rupert (hereinafter referred to as "Father") and English Bruce Rupert, now known as English Bruce Callahan (hereinafter referred to as "Mother") on October 10, 2006. After almost seven years of marriage, the parties separated in June

2011 and were divorced by Final Decree of Divorce entered December 20, 2012. Incident to the Final Decree of Divorce and, in conformity with their Post-Nuptial Agreement, the parties were granted joint legal custody of Rio and primary physical custody was granted to Mother. The visitation rights that were granted to Father included "two nights a week and one weekend night a week," and were subject to the right of Mother to withhold visitation "in the event that the [Father's] substance abuse issues reoccur." Pursuant to Va. Code § 8.01-336, the Court takes judicial notice of the custody/ visitation provisions contained in the parties' Final Decree of Divorce, entered by the Circuit Court for the County of Roanoke, Case No. CL 12-827. In response to notification by Mother of her intention to remarry and take Rio with her to Henderson, Tennessee, Father filed his petition for custody on March 7, 2014. The parties have agreed that Henderson, Tennessee, is near Nashville, and is about four hundred and sixty miles from Roanoke, Virginia. The parties have also agreed that the driving time is between six and seven hours. Mother petitioned for leave to relocate on March 26, 2014. The parties have agreed that their Final Decree of Divorce represents the most recent prior custody order pertaining to their son.

## Opinion

By their petitions, both parties seek to modify the custody provisions of their 2012 final divorce decree. In essence, Father wants primary physical custody of his son so he will remain in the Roanoke area, and Mother wants her son to move with her to Tennessee. There is little question that the evidentiary requirements of both cases overlap. In order for Father to succeed on his petition for custody, he must prove (1) that there has been a material change in circumstances since the most recent prior custody determination and (2) that the modification of custody would be in the best interests of his child. *See Keel v. Keel*, 225 Va. 606 (1983). In such cases, it is well settled that the best interests of the child is the primary consideration and, in addition:

> The Court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children.

Va. Code § 20-124.2(B). For Mother to succeed on her petition to relocate, she must make showings similar to those required in Father's case and, in addition, must show that (3) the relocation will not substantially impair the relationship between the child and his Father. *See Wheeler v. Wheeler*, 42 Va. App. 282, 288-89 (2004) (citations omitted); *Sullivan v. Knick*, 38 Va. App. 773, 783 (2002); *Scinaldi v. Scinaldi*, 2 Va. App. 571, 575 (1986). As to each petition, the burden of proof rests with the parent seeking to modify

the prior order. *See Goodhand v. Kildo*, 37 Va. App. 591, 599 (2002). Furthermore, in the determination of either the custody petition of Father or the relocation petition of Mother, the Court must consider the factors enumerated in Va. Code § 20-124.3. And finally, in the relocation case, the Court may consider a benefit to the custodial parent from relocation *only* so long as the move independently benefits the child. *Cloutier v. Queen*, 35 Va. App. 413, 427-30 (2001) (emphasis added).

Courts in Virginia have made clear that the change in circumstances requirement is a broad concept that incorporates an extensive range of positive and negative developments in the lives of children. *Sullivan*, 38 Va. App. at 781. In the instant case, (i) the Mother's marriage on May 16, 2014, to Brian Callahan, (ii) her decision to move to Henderson, Tennessee, and (iii) the serious health issues from which Father has suffered since 2013 clearly constitute, in the aggregate, the requisite material change in circumstances.

In his testimony, Father described his medical condition as necrotizing pancreatitis secondary to a hereditary condition known as gall disease and years of alcohol abuse. Father's medical condition required his hospitalization from March 2013 to June 2013 and a lengthy recuperation period thereafter. Since his hospitalization in 2013, Father has become an insulin dependent diabetic and has been advised by his doctors that his continued use of alcohol "could kill him." Father further testified that, as a result of his medical condition, he is unable to work and is on temporary disability from his employer.

As to the remaining issues: (1) whether the change of custody as requested by Father or the relocation of the child to Tennessee as requested by Mother would be in Rio's best interests and (2) whether relocation would substantially impair the relationship between Rio and his Father, the instant cases are less clear. After consideration, however, the evidence has established the following facts.

Both Father and Mother are loving and capable parents. Despite the differences in their respective parenting styles, it is clear that each accords high priority to Rio's best interests and his overall happiness and well being.

Each parent has played and will continue to play a significant and important role in the care and upbringing of their son. This was contemplated by the parties when they divorced in 2012 and their Final Decree of Divorce, which incorporated their agreement, provided that the parties would share legal custody, that Mother would have primary physical custody, and that Rio would be with his Father "two nights a week and one weekend night a week." It appears from the evidence that the parties remained committed to this arrangement until Father's hospitalization in 2013.

Notwithstanding their communication difficulties, each parent appears comfortable with the involvement of the other parent in Rio's life. Both Father and Mother appear to recognize that Rio needs the meaningful

involvement of each of his parents in his life. This was demonstrated by the substantial effort undertaken by Mother to ensure that Rio was able to spend time with his Father during Father's recuperation in West Virginia after his 2013 hospitalization.

By all accounts, Rio is a happy and well-adjusted eight year old boy. Rio loves each of his parents and, as to each, enjoys a healthy, positive, and securely bonded relationship. Rio thrives on the time he spends with each of his parents and appears to have adapted to the incorporation into his life of the "significant other" with whom each of his parents is currently involved.

Kathleen Bagby, a licensed clinical social worker, who has counseled Rio since May 2014, testified that Rio had a close but different relationship with each of his parents. The counseling was arranged by Father and, since Mother disagrees with its necessity, the counseling has been implemented with little or no input from Mother. She clarified that Rio's relationship with his father was "very hands on" and that Rio and his father "do things together physically." She opined that because relocation would reduce both the time Rio is able to spend with his father and the activities Rio and his father could do together, relocation would have a detrimental impact on Rio at this time in Rio's life.

Father's current living situation raises stability concerns. He currently lives with his fiancée, who remains married and who testified that it will be some time before she will be in a position to finalize her divorce from her estranged husband. Father's long term disability benefits will expire in April 2015. While he insists that his health is improving every day and that he is slowly regaining his strength, his myriad health issues, with their attendant diet, medication regimen, and physical limitations, pose concerns about his future dependence on others and his ability to play the increased parental role that would be necessary if he were to be awarded primary custody of Rio.

For health and other reasons, Father has made progress in his efforts to move past his previous substance abuse issues. His doctors have told him that his continued use of alcohol could kill him. Yet, on at least one occasion since his hospitalization and lengthy recuperation in 2013, Father consumed alcohol. It also appears from the evidence that Father has previously conducted himself in such a manner to warrant the issuance of a protective order delimiting his contact with Mother's new husband. Effective parenting requires insight, judgment, and prudence. Father's "judgmental slips" suggest a lack of one or more of the foregoing attributes and, in the context of his suitability for custody, are of concern to this Court.

From the evidence, it appears that, at various times, the parties have allowed their relationship to be defined by their animosity and mutual distrust. Each parent testified, however, that their relationship seemed to be improving in recent months. As a result, their ability to communicate or cooperate on matters pertaining to Rio has, at times, been compromised.

This difficulty appears to be driven more from Father's side than from Mother's side. In the view of this Court, Mother appears more secure in her relationship with Rio and appears better able and more willing to foster and encourage the relationship between Rio and his Father than Father would be if the custodial roles were reversed.

The overall parenting capabilities of Mother exceed those of Father. Mother has consistently demonstrated better insight about Rio and, at this time, is better able to assess and meet Rio's emotional and developmental needs.

There is little question, however, that the relationship between Rio and his Father is both important and beneficial to Rio and, as it currently exists, the relationship would be detrimentally impacted if Mother and Rio moved six or seven hours from Roanoke.

Therefore, based on the evidence and after consideration of the factors enumerated in Va. Code § 20-124.3, the Court concludes as follows:

1. A material change in circumstances has occurred since the last custody order was entered on December 20, 2012;

2. Father has failed to meet his burden of proving that an award of Rio's custody to him is in Rio's best interests;

3. Mother has failed to meet her burden of proving either (i) that it is in Rio's best interests to permit his relocation to Tennessee or (ii) that the relocation would not substantially impair the relationship between Rio and his Father; and

4. Although the evidence suggests that relocation to Tennessee would benefit Mother, there exists no evidentiary basis to conclude that such relocation would independently benefit Rio.

Therefore, the petition of Father for custody and the petition of Mother for leave to relocate with Rio are both denied. The parties will continue to share legal custody and Mother shall continue to have primary physical custody, subject to the reasonable visitation rights of Father. Such rights of visitation will necessarily have to be tailored to reflect the current circumstances of each party and, preferably, can be resolved by agreement of the parties. In the event the parties are unable to agree, jurisdiction will be retained in this Court for a reasonable period of time to permit, if necessary, further hearing on matters pertaining to visitation.

The request of Father for an award of attorney's fees and costs is denied.