UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and Huff
Argued at Alexandria, Virginia


JUNG SUN PARK

MEMORANDUM OPINION* BY
v.        Record No. 1134-18-4          JUDGE ROBERT J. HUMPHREYS
FEBRUARY 5, 2019

DANIEL MINKYO CHONG


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows,[1] Judge

Soyoung Lee (Sae W. Lee; The Lee Firm, PLLC, on briefs), for
appellant.

Jessica L. Leischner (Wade Grimes Friedman Meinken & Leischner,
PLLC, on brief), for appellee.


Jung Sun Park ("mother") appeals the February 2, 2018 decision of the Circuit Court of

Fairfax County ("circuit court") granting Daniel Minkyo Chong ("father") joint legal and sole

physical custody of the couple's children.  Mother argues that the circuit court erred by imposing

an affirmative duty on her to return the children to the United States, that the circuit court erred

in finding mother had a valid green card, and that the circuit court erred in its application of the

statutory factors in Code § 20-124.3.

I.  BACKGROUND

Father and mother were married on April 18, 2013, in South Korea.  Father is a

naturalized U.S. citizen, allowing mother to obtain a two-year conditional green card based on

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Bellows issued the final decree of divorce, which incorporated the earlier custody
order of Judge Brett A. Kassabian.

their marriage. Following the marriage, the couple lived in Virginia and had two children. In 2016, the parties agreed that mother would take the children to South Korea to visit mother's family for an extended visit. Mother departed July 24, 2016, with father planning to join the family on August 24, 2016. Mother and the children were expected to return to Virginia on November 20, 2016. Mother was expecting to receive a permanent green card during this trip, as the parties had petitioned to remove the conditions on her green card prior to her departure.

During a phone call on August 16, 2016, the parties quarreled, causing father to cancel his plans to join the family in South Korea. The parties did not communicate following this incident until mother failed to return to Virginia as planned. On November 21, 2016, father texted mother inquiring why she had not returned to Virginia. Mother stated that she believed her green card was now invalid. In fact, while mother was on the trip, father had received notice that mother's green card had been extended for another year but had not communicated this fact to mother.

Mother did not return to Virginia following the phone call, and on December 6, 2016, father filed for divorce. On August 16, 2017, father filed a motion to return the children to Virginia. This motion caused the circuit court to expedite a planned custody hearing, which occurred on December 4 & 5, 2017. At the end of the hearing, the circuit court held that father and mother should have joint legal custody, with deference to father in case of a dispute, and that father should have sole physical custody, with mother having visitation rights in Virginia, Maryland, and the District of Columbia. The circuit court noted that though the initial trip was mutually agreed upon, it was clear that at least from May 2017, mother was aware that her green card had been extended and that mother demonstrated a refusal to make the children available to father. The circuit court highlighted the fact that mother had left the children in South Korea during this trial as a particularly inexcusable example of this conduct. Addressing mother's core

explanation that she was uncertain of her immigration status and that father had not informed her of the green card extension, the circuit court stated that, regardless of when mother learned of the green card status through father, mother is a highly-educated individual who made no attempts on her own to inquire into her immigration status, instead relying on willful ignorance. The circuit court ultimately found, after considering all the statutory factors in Code § 20-124.3, that mother's conduct in denying father any access to the children significantly outweighed any passivity on father's part with regard to attempts to contact the children. This custody order was issued on February 2, 2018, and later incorporated into the circuit court's final order of divorce issued May 29, 2018. This appeal follows.

## II. ANALYSIS

When addressing custody and visitation, "[t]he best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute." Copeland v. Todd, 282 Va. 183, 197 (2011) (quoting Bailes v. Sours, 231 Va. 96, 99 (1986)). Code § 20-124.3 enumerates the factors which the court must consider in determining these best interests. "Failure to consider all the factors set out in Code § 20-124.3 is reversible error." Goodhand v. Kildoo, 37 Va. App. 591, 600 (2002). While each factor must be considered, the circuit court is not required to exhaustively explain its reasoning or what weight each factor was accorded. Id.

The circuit court duly performed the Code § 20-124.3 statutory analysis. Mother, however, takes issue with the results. "[T]his Court 'afford[s] great deference to the trial court's determination of what is in the best interests of the child.'" Surles v. Mayer, 48 Va. App. 146, 172 (2006) (quoting Yopp v. Hodges, 43 Va. App. 427, 439 (2004)). As a result, we will not overturn the best interests determination of the circuit court unless it is plainly wrong or without evidence to support it. Id.

Mother specifically challenges the circuit court's interpretation of the sixth and tenth factors of Code § 20-124.3. The sixth factor considers "[t]he propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child." Code § 20-124.3(6). The tenth factor, serving as a catch all, encompasses "[s]uch other factors as the court deems necessary and proper to the determination." Code § 20-124.3(10).

Addressing the circuit court's Code § 20-124.3(6) analysis, mother argues that the circuit court's determination that keeping the children in South Korea denied father access to them is factually false, as father could have contacted them via phone, skype, or flown to South Korea himself. Mother argues it would, in fact, have been more sensible for father to fly to South Korea than for mother and the children to return to Virginia. At the time of mother's trip, the children were quite young—the eldest being two years old. Thus, any attempt to contact the children would require mother's facilitation, whether in person or otherwise. In making its evaluation, the circuit court heard testimony from father that, though ethnically Korean, he had not spent substantial time in the country in decades and was the sole breadwinner for the family. A trip to visit the children in South Korea would have entailed taking time off from work and would of course had no guarantee of success. It is not a given that father would have been able to see the children once in the country.

In assessing this evidence, the circuit court made a factual determination, which mother argues against on credibility grounds. Our standard of review prevents independent fact-finding on our part and overturning the circuit court's judgment unless it was without evidence. The circuit court's determination that mother's decision to stay in South Korea unreasonably denied access to father was supported by evidence and thus will not be overturned.

- 4 -

In its analysis of the tenth factor of Code § 20-124.3, the circuit court faulted mother for failing to bring the children back to Virginia with her when she was compelled to return for the custody trial on December 4 & 5, 2017. The circuit court saw this failure as an ultimate incident in a line of behavior where mother repeatedly denied father access to the children. Mother does not elaborate why this behavior was improper for the circuit court to consider, outside of stating that mother anticipated difficulty entering the United States because of the uncertainty surrounding her green card status. Mother's refusal to bring the children with her was highly relevant and was considered by the circuit court to highlight a pattern of denial of access well within the scope of what Code § 20-124.3 considers.

Aside from these specific factual objections, mother also broadly argues that the circuit court erred by imposing an affirmative duty on her to "proactively bring the children to father so that he could have access in the United States." Mother claims that the circuit court's analysis constitutes an affirmative duty on mother to "rush back" to Virginia with the children as soon as she learned of her green card status. As legal support, mother cites Parish v. Spaulding, 26 Va. App. 566 (1998), aff'd, 257 Va. 357 (1999), where a mother with sole custody moved out of state without court permission and subsequently sought and received a custody modification based on the change in circumstances she had precipitated. We granted the custody modification, holding that her move did not bar her from seeking modification of custody or retroactive court approval. Id. at 572. Mother cites this case for the proposition that there is "no penalty applied to the custodial parent in a long-distance situation with the non-custodial parent even where the remoteness in location is precipitated and created by the custodial parent." This is a far cry from what was actually adjudicated in Parish, which dealt with whether one parent's unilateral move procedurally precluded consideration of her subsequent motion. Here, there was no custody agreement in place, as mother's trip was a mutually agreed upon temporary vacation.

More fundamentally, it is absurd to claim that the circuit court "created a duty" through its examination of mother's behavior. The court was not ordering mother to rush home but was *post hoc* weighing her decision to keep the children in South Korea. The circuit court weighed facts; it did not impose a duty.

Finally, mother assigns error to the circuit court's finding that her green card was valid. Mother reasons that because the green card was granted provisionally following the parties' marriage, and because that marriage was in the process of being terminated, that the green card could not have been valid. Mother does not actually demonstrate the green card's invalidity, instead taking issue with the circuit court "blaming" her for her confusion regarding the validity of the green card. She argues this confusion was a benign mistake rather than willful ignorance, because she would not have been able to receive a permanent green card without father's cooperation and should not have been held against her in the circuit court's analysis. As the circuit court noted, mother is a highly educated individual who made no effort to inquire into her green card status. Further, mother's argument is contradicted by the facts in the record. Mother now resides in the United States—she was apparently able to achieve this outcome without father's help. Regardless, the validity of her green card was a factual determination, properly made by the circuit court, which is not contradicted by mother's argument. It was therefore proper for the circuit court to consider her immigration status in the context of its Code § 20-124.3 analysis.

### III. CONCLUSION

As noted above, we give wide deference to a circuit court's application of these factors and do not overturn the resulting decision so long as the legal analysis is complete, correct, and supported by the evidence. We also note, regarding mother's argument that the circuit court's analysis created a legal burden for her, that the consideration of these factors creates no legal duty

for either party.  Rather, performing this analysis *is itself* a legal duty imposed on the circuit court by statute.  Here, the circuit court executed that legal duty correctly.  Therefore, the decision of the circuit court is affirmed.

Affirmed.