COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges O'Brien, AtLee and Senior Judge Clements
Argued at Fredericksburg, Virginia


KIMBERLEY ANNE PRENTICE, F/K/A
 KIMBERLEY ANNE COOK

                                                          MEMORANDUM OPINION[*] BY
v.      Record No. 0836-21-4                       JUDGE MARY GRACE O'BRIEN
                                                              JUNE 14, 2022

BRIAN CHRISTOPHER COOK


                   FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                             James E. Plowman, Jr., Judge

                Ronald M. Jacobs (Venable LLP, on briefs), for appellant.

                Brandy M. Poss (Barnes & Diehl, P.C., on brief), for appellee.


       Kimberly A. Prentice (mother) appeals an order denying her motion to relocate to South

Carolina with the parties' two children, granting primary physical custody to Brian C. Cook (father),

and awarding him attorney fees.

       Mother argues the court erred by (1) not considering the children's preferences or father's

history of abuse, (2) considering her violation of a *pendente lite* order, (3) giving undue weight to

whether relocation would substantially impair the children's relationship with father, (4) focusing

on whether relocation was in the children's best interests but not considering whether a change of

custody was in the children's best interests, and (5) awarding attorney fees to father.

                                          BACKGROUND

       The parties married in 2005, had two daughters, and divorced in 2018. The divorce decree

incorporated a marital settlement agreement (MSA) providing for joint legal custody of the children,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

with primary physical custody to mother. Father was allowed only supervised visitation until he completed treatment for alcohol addiction. The MSA also extended a preexisting protective order against father. Finally, it provided that in an enforcement action, the prevailing party was entitled to attorney fees.

Mother remarried after the divorce. Her new husband, with whom she had another child, secured employment in Charleston, South Carolina, and moved there in February 2019. In April 2019, mother filed a motion to relocate to South Carolina. Mother and father signed an agreed temporary order in September 2019 that awarded father additional supervised visitation, with conditions to ensure his sobriety during visitation, including regular alcohol monitoring using a portable breathalyzer and ignition interlock device. The order also expressly provided that "[n]either party shall relocate with the minor children absent a court order permitting the same." The relocation trial was set for March 2020.

Due to the COVID-19 pandemic, the courts closed in March 2020 before the relocation trial could occur. On March 26, 2020, mother filed a notice of relocation, listing a new address in South Carolina, and a motion to modify visitation. Mother argued that a combination of factors required her immediate move, including her "high-risk" pregnancy, childcare issues for her toddler, the expiration of her lease in Virginia, and the untenable costs of maintaining two homes. Father objected to mother's relocation and requested temporary physical custody pending a hearing.

In a June 12, 2020 letter opinion, the court acknowledged that "[t]he suspension of the parties' March[] 2020 hearing date . . . was necessitated by extraordinary events beyond everyone's control." The court nevertheless determined that it "cannot allow either party to ignore the clear requirement of a court order because they no longer deem it fair or applicable."

Because mother was now living in South Carolina, the court established a new temporary custodial schedule, ordering shared physical custody of the children on a three-week alternating

- 2 -

basis. Father's time with the children remained subject to supervision, and he was required to continue the alcohol-monitoring program. The temporary order required the children to remain enrolled in the Loudoun County public school system.

At the time of the relocation trial in May 2021, the children were fifteen and thirteen years old. The parties agreed that father, who had been a stay-at-home dad for approximately five years before the parties separated, had always been involved in the children's lives, even after the separation. The children had always attended Loudoun County public schools and were doing well academically and socially. They had numerous friends and extended family in Virginia. The younger child played softball but was dismissed from her team when she began spending three weeks at a time in South Carolina pursuant to the shared custody arrangement. Father found another softball team that could accommodate the child's schedule, and he became an assistant coach. At trial, father's own father, who typically supervised custodial time, detailed the "warm relationship" and "signs of affection" he observed between father and the daughters.

Father acknowledged his history of alcohol addiction, and he detailed the treatment that he received. The evidence included breathalyzer and ignition interlock reports from father's participation in the alcohol-monitoring program. Father admitted that, in the 2018 to 2019 time frame, he occasionally drank during his custodial time "at night in [his] room" after the children were asleep. However, at the time of trial, he had been sober for more than 500 days. He also admitted that in the past, he sent mother offensive emails and letters, sometimes via one of the children. Mother conceded that father's recent communication had significantly improved.

Mother testified that she would not return to Virginia. She explained that the move to South Carolina was economically advantageous because she and her husband would not have to maintain two households. She testified that the children had a "tight bond" with their half-siblings and her

husband, who made sure "that they're well taken care of." Her husband has extended family nearby.

Mother testified that the children had "concern over [father having] a relapse," and her counsel stated, "Candidly, Your Honor, I'm trying to avoid having the children have to testify about some of this stuff." The court responded that it was "not interested in hearing from the children" and did not think that "weigh[ing] in" on the custody and relocation decisions would be "beneficial" to them or "in the[ir] best interests."

Mother's counsel stated that although she "would like to avoid" having the children testify, she wanted to get one child's "very strong preference before the [c]ourt." The court suggested a proffer that the child "still has concerns for her dad's safety and for relapse," and counsel responded, "That is a really big help[,] and I appreciate the [c]ourt speaking to us in advance. It eliminates us moving forward in a direction that we don't need to do."

At the conclusion of mother's evidence, she unsuccessfully sought an agreed proffer that the children would prefer to move to South Carolina. Mother stated that she would "reserve . . . for rebuttal" evidence of the children's preferences to relocate if she thought the court had "gotten an unclear picture of their preference." She explained that because the children's preferences are a factor for considering their best interests under Code § 20-124.3, she would "preserve the rebuttal at a very narrow sense only if I think the [c]ourt is getting an unclear picture that's totally inconsistent with what I believe is their preference."

> Absent that, and it's just about their best interest and not on their preference, then that's fine. But I would ask the [c]ourt for the ability to have their preference heard only if there's testimony put into evidence that's inconsistent to what I believe they would testify to on that narrow subject.

Mother did not call the children to testify on rebuttal.

At the conclusion of the case, the court found that mother's relocation to South Carolina and father's "500-plus days of sobriety" both constituted materially changed circumstances since the initial custody order.

In reviewing the factors of Code § 20-124.3 to determine if relocation was in the children's best interests, the court noted that the children were both in good mental and physical health and had family connections in Virginia and South Carolina, with more peers and family members in Virginia.

When considering the sixth factor of Code § 20-124.3, the "propensity of each parent to actively support the child's contact and relationship with the other parent," the court found that although father's communications from 2018 and 2019 were often "foul" and "mean-spirited," his recent communications were "more appropriate." The court also noted that father had apologized for his prior communications and was now "trying to coparent" and "trying to be cooperative," while mother's communications were "[s]narky," and she added "salt in the wound" by insisting that her current husband be copied on all parenting-related messages.

The court analyzed the eighth factor, the "reasonable preferences of the child," as follows:

> I may have pushed back a little too much on this. I know both parties had the girls on their witness list. I wasn't particularly interested in hearing either one of them say—and they may have said, we both prefer to live with mom in South Carolina.
> That was sort of implied in the testimony at least from [the older child]. Or they may have said, we sure don't want to be away from our friends and our father in Virginia.
> So[,] we didn't hear that. However, I considered both extremes. It wouldn't change my ruling today if both the girls had said, "We want to stay in South Carolina" or if both girls had said, "We want to stay in Virginia." And even weighing their input because it's not about what the girls want. It's about what is in their best interest. Sometimes teenagers don't always make decisions that are in their best interest.
> So[,] even considering that that's what their testimony might have been[,] it would not have changed my ruling.

Regarding the ninth factor, the "history of . . . family abuse," the court acknowledged evidence of father "drinking during his custodial time" but also noted that it was "off on his own in his room away from the girls." The court reviewed all breathalyzer and ignition interlock reports but found no "actual alcohol violations . . . for the time frame that we're talking [sic] during this 500-plus days of sobriety."

The court also addressed the tenth factor, the "[o]ther factors as the court deems necessary." It referred to the grandfather's testimony as being "helpful and very insightful . . . in describing the nature of [father's] relationship with his daughters." The court noted because mother wanted to relocate, it was her "burden . . . to show what serves the best interest of the child[ren] and that [relocation] would not substantially impair [father's] relationship with them." The court stated that "[t]he proof of a close relationship [between father and the children] cuts against [mother's] relocation."

The court found that the "objective reasons" for mother's relocation—including her remarriage, financial struggles, and the new husband's pursuit of employment in South Carolina— did not constitute a "legitimate safety emergency or some other factor" that would justify her unilateral relocation in direct violation of a court order: "They expressly agreed not to relocate[,] but that occurred." The court noted that mother's violation of the court order was not dispositive but "a factor to consider. I think it's a smaller factor."

The court lauded the father's "fairly recent[]" involvement with one daughter as a coach of her softball team and found that there would be "no meaningful way" for father to participate in the children's "daily or weekly activities" if they moved to South Carolina.

Ultimately, the court denied mother's motion to relocate. Further, because mother testified "that she will not be returning to Virginia," the court concluded that it had "little alternative but to

award [father] primary physical custody." The court set up a visitation and transportation schedule and ordered child support pursuant to the guidelines.

The court initially awarded father $64,000 of his attorney fees, finding that "the vast bulk of this litigation was prompted by the independent and voluntary decision by [mother and her new husband] to relocate to South Carolina." However, after mother pointed out that litigation was also required to enforce anti-alcohol provisions of the prior order, the court agreed to reconsider the issue. Following hearings on May 7 and May 19, for which there are no transcripts, the court reduced father's award to $34,000.

## ANALYSIS

A court's decision regarding a parent's relocation and the children's best interests "is a matter of discretion," and "unless plainly wrong or without evidence to support it, the court's decree must be affirmed." *Sullivan v. Knick*, 38 Va. App. 773, 783 (2002) (quoting *Bostick v. Bostick-Bennett*, 23 Va. App. 527, 533 (1996)); *see also Judd v. Judd*, 53 Va. App. 578, 589 (2009).

"[I]n a court's decision as to the propriety of relocating the children . . . , 'the welfare of the children is of primary and paramount importance.'" *Parish v. Spaulding*, 26 Va. App. 566, 572 (1998) (quoting *Simmons v. Simmons*, 1 Va. App. 358, 361 (1986)), *aff'd*, 257 Va. 357 (1999).

### A. Assignment of Error 1—Children's Preferences and History of Family Abuse

Mother argues the court abused its discretion by refusing to consider the children's preferences or father's history of family abuse when determining whether relocation was in the children's best interests.

### 1. Children's Preferences

When determining what custody arrangement is in a child's best interests, the court must consider the factors in Code § 20-124.3, including "[t]he reasonable preference of the child, if the

court deems the child to be of reasonable intelligence, understanding, age, and experience to express such a preference." Code § 20-124.3(8).

Mother contends that the court "refused to consider the two girls' reasonable preference at all, in either the [relocation] or custody contexts." She refers to the court's statement that it "wasn't particularly interested in hearing either of them say—and they may have said, we both prefer to live with mom in South Carolina." She also cites the court's comment that regardless of the children's preferences, the court "wouldn't change [its] ruling . . . because it's not about what the girls want. . . . Sometimes teenagers don't always make decisions that are in their best interest." The court's abuse of discretion, mother argues, is thus underscored by its express disregard for this statutory factor. [1]

The gravamen of mother's assignment of error is that the court did not want to hear the children's testimony. However, mother chose not to call them as witnesses and instead agreed to proffer that one child "still has concerns for her dad's safety and for relapse." At the conclusion of her case, mother reiterated her decision not to have the children testify, and she explained that she was reserving their testimony for rebuttal, if needed. Although father would not agree to a specific proffer that the children's preference was to relocate with mother (he did accept the prior proffer that one child was concerned about his safety and relapse), he acknowledged that mother was "welcome to reserve for rebuttal."

At the conclusion of father's case, mother opted not to call the children as rebuttal witnesses, despite expressing her intent to do so if necessary to rebut other evidence concerning the children's

---

[1] Mother also relies on the court's exclusion, on hearsay grounds, of a therapist's testimony regarding the children's preferences. However, mother did not object to or appeal the exclusion of this evidence. To the contrary, mother's counsel agreed that the testimony was hearsay, saying "[s]ure," when the court said, "[i]t's pretty clear that that's hearsay." Because mother failed to preserve this issue for appellate review, we decline to consider it. *See* Rule 5A:18.

preferences. Mother's trial strategy impacted the evidence that was presented regarding the children's preferences—not any decision by the court to disregard it. A court can only base its decision on evidence that is presented by the parties and reasonable inferences therefrom. *See Wynnycky v. Kozel*, 71 Va. App. 177, 203 (2019). Mother affirmatively chose not to call her children as witnesses to testify about their preferences. Therefore, she cannot complain on appeal that the court erred by refusing to consider this evidence. *See, e.g., Moreno v. Commonwealth*, 65 Va. App. 121, 130 (2015) (stating that an appellant "cannot invite error and then try to take advantage of it later on appeal").

## 2. History of Family Abuse

Code § 20-124.3(9) requires the court to consider

> Any history of (i) family abuse as that term is defined in [Code] § 16.1-228; (ii) sexual abuse; (iii) child abuse; or (iv) an act of violence, force, or threat as defined in [Code] § 19.2-152.7:1 that occurred no earlier than 10 years prior to the date a petition is filed.

Family abuse includes "any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of . . . bodily injury and that is committed by a person against such person's family or household member." Code § 16.1-228.

Mother argues that the court did not consider evidence of family abuse that took place during the marriage and therefore "impermissibly kept out evidence of abuse that it was statutorily required to consider." Mother contends the court erred by focusing exclusively on father's alcohol abuse, and by complimenting him for his newfound sobriety, rather than considering the requisite ten-year history of family abuse. She argues the court "artificially constrained" itself to review only the time frame since the divorce in 2018.

However, mother did not present evidence of an assault that occurred during the marriage, and therefore we cannot find that the court erred by not considering it. Father did concede at trial

that he was convicted of violating a protective order; however, the court did not abuse its discretion by omitting mention of this specific evidence in its consideration of the statutory factors for determining the children's best interests. *See Farley v. Farley*, 9 Va. App. 326, 329 (1990). "A trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Id.*

Mother also contends the court erred by not considering messages father sent her or evidence that, prior to the divorce, father once passed out in a car while waiting to pick up the children. Based on our review of the record, the messages did not threaten bodily injury and therefore do not constitute "family abuse" as that term is defined in Code § 16.1-228. Further, the court did consider them, referring to them as "foul" and "mean-spirited." Likewise, the car incident did not involve an act of family abuse. *See* Code § 16.1-288. Therefore, the court did not err in its consideration of the "history of family abuse" factor in Code § 20-124.3(9).

### B. Assignment of Error 2—Mother's Violation of a Court Order

Mother acknowledges that she violated the temporary custody order by relocating to South Carolina with the children. However, she argues the court abused its discretion by putting undue weight on this violation because that consideration "is not based on determining the best interest of the child." She primarily relies on *Parish v. Spaulding*, 257 Va. 357 (1992), where the Supreme Court affirmed the transfer of custody to a mother who relocated with the children in violation of a juvenile court order. 257 Va. at 363-64. "To require the children to return to Virginia irrespective of their best interests would have violated the requirement that courts act only in furtherance of those interests." *Id.* at 363. Thus, the Supreme Court recognized a court's authority to retroactively approve an unapproved relocation, if the evidence demonstrates that the relocation was in the child's best interest. *See id.*

- 10 -

Here, the record reflects that the court did not base its decision primarily on the evidence of mother's violation of the temporary order. The court considered mother's violation pursuant to the tenth factor in Code § 20-124.3, which allows a court to take into account "[s]uch other factors as the court deems necessary and proper to the determination." In so doing, the court expressly stated that mother's violation of a court order was not dispositive but was at least a "smaller factor" for consideration. It noted that mother's relocation was driven by her personal circumstances and preferences, not because of a legitimate safety emergency or independent pursuit of the children's best interest. *See Goodhand v. Kildoo*, 37 Va. App. 591, 599 (2002) (stating that a court "may consider a benefit to the parent from relocation only if the move independently benefits the [child]" (alteration in original) (quoting *Cloutier v. Queen*, 35 Va. App. 413, 430 (2001))). Unlike in *Parish,* the court found that relocation to South Carolina was not in the children's best interest, and therefore it was not compelled to retroactively approve the move. *Cf. Parish*, 257 Va. at 363.

The record demonstrates that the court did not deny mother's relocation motion only to "punish" her for violating a court order but instead considered that conduct among the totality of evidence presented regarding the children's best interest. A court is "not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors,'" *Sullivan*, 38 Va. App. at 783 (quoting *Sargent v. Sargent*, 20 Va. App. 694, 702 (1995)), and its "evaluation of the best interests of the child will not be disturbed on appeal if the findings of the court are supported by credible evidence," *Goodhand*, 37 Va. App. at 600. Credible evidence supports the court's evaluation of the children's best interest, and we will not reweigh the factors on appeal.

C.  Assignment of Error 3—Substantial Impairment to Father's Relationship with Children

Mother argues the court abused its discretion by putting undue emphasis on whether relocation would substantially impair the children's relationship with father and failing to consider that "effective visitation could cure any impairment."

Because mother was relocating, it was her burden to prove that the move would not substantially impair father's relationship with the children.  *See id.* at 602 (stating that "in relocation matters, the moving party . . . bears the burden of proving that relocation will not cause a 'substantial impairment' to the relationship between the non-moving parent and the child"); *see also Stockdale v. Stockdale*, 33 Va. App. 179, 184-85 (2000).  The record supports the court's finding that mother failed to meet that burden.  Instead, the evidence demonstrated that relocation would substantially impair father's relationship with the children.  *See Stockdale*, 33 Va. App. at 187 (recognizing the non-moving party's right to present evidence that relocation would substantially impair relationship).

In reaching that conclusion, the court emphasized father's recent involvement with the youngest child as a coach for her softball team and found that relocation would preclude his participation in a broad array of the children's daily activities in and out of school.

Mother argues the court erred by focusing on father's recent conduct and not considering the impact of appropriate visitation.  However, the court found that mother failed to prove that visitation could adequately facilitate father's active participation in the children's lives.  Although father had a history of alcoholism, he recently reached 500-plus days of sobriety, had significantly improved communications with his family, and was actively pursuing daily involvement in the children's lives.  In fact, father's sober lifestyle was one of the materially changed circumstances identified by the court.  The court did not ignore evidence of father's history but weighed it against recent lifestyle changes and credited his apologies for past behaviors.

We must defer to the finder of fact. *See Petry v. Petry*, 41 Va. App. 782, 790-92 (2003); *Venable v. Venable*, 2 Va. App. 178, 186 (1986). Because these factual determinations are supported by the evidence and are within the court's discretion, we affirm the determination that relocation would substantially impair father's relationship with the children.

### D. Assignment of Error 4—Changing Custody to Father

Mother argues the court erred by focusing solely on whether relocation was in the children's best interest without also considering whether changing custody to father was in the children's best interest. Mother essentially argues the court was required to analyze the statutory factors twice: first when considering her relocation motion, and second when changing custody to father. She argues that father would have the burden of proof in this second analysis.

The court considered the factors in Code § 20-124.3 to determine the children's best interests. Based on mother's testimony that she was not going to return to Virginia, the court had no choice but to change custody to father after denying her relocation motion. A court is "required to fashion an appropriate remedy that comport[s] with the best interest of the children." *Cloutier*, 35 Va. App. at 424. After denying mother's relocation request, and finding that mother would not return to Virginia, the court did not err in fashioning a remedy that would serve the children's best interests—here, awarding custody to father. *See* Code § 20-108 (authorizing a court to modify a custody order "as the circumstances of the parents and the benefit of the children may require"). Virginia law does not require a separate analysis of the statutory factors; in considering mother's relocation motion, the court was already weighing whether the children's best interests were served by moving to South Carolina with mother or staying in Virginia with father. "The need to fashion complete justice on the facts presented is the role of the [trial court]," which must "make a custody determination based solely upon the best interests of the children." *Cloutier*, 35 Va. App. at 424.

- 13 -

Given the evidence in this case and the paramount concern for the children's best interests, we hold that the court did not abuse its discretion in transferring custody to father.

### E. Assignment of Error 5—Father's Attorney Fee Award

Mother argues the court erred by awarding $34,000 in attorney fees to father because an "outsized portion" of fees were attributable to father's violations of the MSA.

The court originally awarded father attorney fees in the amount of $64,000. Mother requested reconsideration because the parties' litigation was attributable in part to father's violations of the MSA's anti-alcohol provisions. The court agreed to reconsider the matter and, after proceedings, entered an order that awarded father $34,000 in attorney fees.

The record indicates the parties appeared in court to argue mother's motion to reconsider attorney fees on May 7 and May 19, 2021; however, the record does not contain transcripts from these proceedings, and in the absence of transcripts, we cannot review the court's reasoning or calculation of the attorney fee award. *See* Rule 5A:8(b)(4)(ii) ("When the appellant fails to ensure that the record contains transcripts . . . necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered."); *see also Browning v. Browning*, 68 Va. App. 19, 28 (2017). Therefore, we cannot consider mother's assignment of error.

Finally, father requests his appellate attorney fees and costs pursuant to Rule 5A:30(b). "In determining whether to make such an award, this Court will not be limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but may consider all the equities of the case." Rule 5A:30(b)(3). Mother's appeal was neither frivolous nor lacking substantial merit, and the record provides no equitable basis for awarding appellate attorney fees and costs. Therefore, we deny father's request.

- 14 -

CONCLUSION

The court did not err in denying mother's relocation motion and transferring primary physical custody to father. Mother did not provide an adequate record for us to review the attorney fee award. Therefore, we affirm the judgment below.

*Affirmed.*